Statement of the Case.
MONROE, J.
Relator and other persons, desiring to have their names placed upon the official ballot as nominees to the various parochial and municipal offices which are to 'be filled in this parish and city at the election to be held in November proximo, filed certain nomination papers in the office of the Secretary of State. Within the legal delay thereafter, James C. Henriques, as a qualified elector, member of the Democratic party, and chairman of the Democratic parish committee, representing the nominees of that party in this parish, made written objections to the papers so filed, attaching thereto his affidavit to the effect that he had notified the candidates named, that he had protested against their papers, by mailing letters directed to each at the address given in such papers. And, thereupon, also within the legal delay, a “Contest Board” was organized, as required by law, before which relator and his associates, through their representative, and said Henriques appeared and were heard with respect to the objections so made by the latter, with the result that, after duly considering said objections, the board decided that they should be sustained, and that relator and his associates should be denied the right to have their names appear on the official ballot.
Some two weeks later, relator and his associates appeared in the civil district court-for this parish, and, alleging the filing of their nomination papers and the protest thereto, as herein above stated, further alleged that said protest—
“was considered and acted upon by the protest board * * * ; that said board sustained said protest and declared said nomination papers to be irregular, and accordingly declared that the nominees, your petitioners herein, were not entitled to have their names placed upon the official ballot * * *; whereupon, your petitioners, in conformity with section 58, Act No. 152, p. 281, * * * for the year 1898, proceeded to file new nomination papers, which said papers were signed by the required number of duly qualified voters * * * and were presented to the registrar of. voters * * * with the request that he issue .a certificate certifying to the number of qualified signers to said nomination papers * * *; that said registrar * * * refused * * * to issue the certificate * * *; that, under the law * * *, they have the right to file the new nomination papers, when, as in this case, the-original nomination papers are declared by the protest board to be irregular, at any time before the 5th Tuesday next preceding the day of election.”
And they prayed for -a writ of mandamus commanding the registrar to issue the desired certificate. The district court found, after hearing the parties, that, under the law, the right to file new nomination papers must *191 be ’exercised before a primary election is held, and that the Democratic primary haying already been held, relators’ application came too late. The mandamus was, therefore, refused, and relators, so far as appears acquiesced in the judgment. They, however, then, instituted the present proceedings- (that is to say, W. G. Tebault, candidate for the ofBee of mayor, brought this suit, and his associates, candidates for other offices, united in bringing a similar suit, entitled “State of Louisiana ex rel. Wm. E. Piper et als. v. John T. Michel, Secretary of State,” now bearing the number 17,343 of the docket of this court, 47 South. 464[1]), in which they pray for a mandamus ordering the Secretary of State to put their names on the official ballot, alleging (inter alia) that—
“James O. Henriques, appearing before the board of contest * * *, first, as a duly qualified elector in the parish of Orleans and a member of the Democratic party * * *; second, in his official capacity as chairman of the Democratic parish committee, * * * and, as such, the representative of all the nominees of the Democratic party, * * * protested against the nomination of petitioners, on various and sundry grounds, but, particularly, for this, to wit. that, under the primary election law, * * * no person can sign a nomination paper who has participated in a primary election which has been called to nominate candidates for said party * * *; that, on September B, 1908, the board of contest met and decided that * * * those who were alleged to have participated in the Democratic primary election of September 1, 1908, must be eliminated ,from the nomination papers of your ap-pearers and others, and that, for that reason, the said nomination papers did not contain the required number of signatures, and, accordingly, the 'names of your petitioners and others must be excluded from the official ballot.”
The petition further alleges that the Secretary of State is proceeding to prepare the official ballot without placing the names of petitioner thereon, and—
“that there was no contest before said board of contest, for the reason that James G. Hen-riques, individually, as an elector and a Democrat, and as chairman of the Democratic parish committee * * ®, was absolutely without right or authority or interest in appearing as a contestant, * * * and, under the law, the papers having been received and filed by the Secretary of State, the action of the board of contest is absolutely null * * * ; that the said board * * * is without right or authority in law to examine and pass upon any question in connection with the nomination papers, * * * except irregularities in the formal preparation of said papers; that. the papers bore the signatures, duly certified by' the registrar * * * of more than the required number of electors, and the board of contest had no right or authority to examine into the eligibility ,of said signers, and more particularly into the question whether or hot said signers had subsequently participated in the primary of another party; that, inasmuch as said decision of said board of contest is not based in any particular on matters over which the board has jurisdiction by law, its decision is null.”
By supplemental petition, it is also alleged that there was no contest before said board, for the-further reason — ■
“that no notice of contest, as required by law, was ever served on relator in a legal manner.”
Relator prays for a writ of mandamus commanding the Secretary of State to place -his name upon the official ballot—
“* • * as the candidate of the Independent Democratic League for mayor, * * * jointly with the other candidates of said league and under the emblem ‘Liberty Bell.’ ”
The Secretary of State, having been ordered to show cause why the writ prayed for should not issue, excepted, and answered that the power to determine questions arising from objections to nomination papers is political and is vested in a contest board, whose decision is final, and that the courts are therefore without jurisdiction; that, even if the courts had jurisdiction, the petition discloses no cause of action, since it admits that James G. Henriques, as citizen, elector, Democrat, and chairman of the Democratic parish committee, made objections before the contest board, that the board considered the objections and acted on them, excluding relator’s name from the official ballot, and that there •is, under the circumstances, no ministerial duty devolving on the Secretary of State to place the name of relator on said ballot; *193 and, further, that relator acquiesced in the decision of the board by attempting to file new nomination papers, and is thereby es-topped.
The exception of no cause of action was not acted upon, and the exception to jurisdiction was referred to the merits.
Relator then offered in evidence the nomination papers relied on (which were objected to), the written objections thereto, with the affidavit attached, and the minutes of the contest board, and, taking the stand as a witness in his own behalf, testified that he had been given to understand that the Secretary of State was unable to supply a sufficient number of forms to be used for the purposes of the nomination papers, and that he and his associates had caused those used by them to be printed from such form as was furnished.
The grounds of objection to the papers in question, as set forth in the written instrument filed by Mr. Henifiques (acting in the different’ capacities already mentioned), are, substantially, as follows:
(1) That the law requires that each candidate shall present a separate paper, with the required signatures, but that relator and his associates are relying upon papers whereby they purport to be jointly nominated by the same electors.
(2) That the indications are that a large proportion of the signatures to the papers relied on were written by the same person.
(3) That the signatures of E. Bille and O. Bille are duplicated.
(4) That 14 of the persons whose names appear on the papers voted in the Democratic primary in September, 1908.
(5) That, deducting the duplicated names and the names of those who participated in said primary, there are but 94 signatures or names left, which is an insufficient number.
(6) That the papers purport to nominate two persons for the office of recorder of mortgages, and neither has enough signatures to make the nomination.
(7) That the papers purport to nominate two persons for the office of clerk of the criminal district court, and neither has enough signatures to make the nomination.
(8) That the number of signers should be further reduced by eliminating the names of the candidates.
The minutes of the contest board (offered on behalf of relator) show that it was admitted, at the hearing before that tribunal, that the signatures of the two Billes were duplicated, and that there were “no legal nominees for clerk of the criminal district court or for recorder of mortgages.” And the minutes then proceed as follows:
“And, after hearing further .evidence and argument, and the case being closed, it was:
“By Mr. Steele: Resolved, that the objections and protest filed by Mr. Henifiques to the nomination papers for parochial offices be sustained; that the parties be denied the right to have their names appear upon the official ballot at the election to be held in November. Adopted.”
And similar action appears, then, to have been taken as to the objections and protest in the case of each of the nominees separately, after which, the board adjourned.
There was judgment in the district court rejecting relator’s demand, and he prosecutes this appeal.
Opinion.
The election law (Act No. 152, p. 260, of 1898, as amended by Act No. 132, p. 199, of 1900, and other statutes) contemplates that nominations shall be made to public offices by conventions and caucuses, and by qualified electors, acting individually, and that the Secretary of State shall promulgate the nominations, and cause the official ballot to be prepared, with the names of the nominees and other specified matter printed thereon. The information upon which he is to predicate his action is to be derived, where con *195 vention or caucus nominations are made, from certificates, to be signed by tbe presiding officers and. secretaries of those bodies, and, where the nominations are made by the electors acting individually, by what are called nomination (or nominating) papers, prepared in a manner prescribed, signed by such electors, attested by one of them, and certified by the registrar of voters as to the number of signatures representing the names of qualified voters in the division for which the nominations are made. The papers, as thus prepared, are to be filed with the Secretary of State on or before. the date on which the first primary election is held by any political party to nominate candidates for the next ensuing election. The following further provisions are found in section 55 of Act No. 152, p. 281, of 1898, as amended and re-enacted by Act No. 132, p. 201, of 1900, to wit:
“Section 55 — That the * * * nominating papers, being so filed and being in apparent, conformity with the provisions of this act, shall be deemed regular unless objection to their regularity is made in writing within 72 hours afler the last day allowed by law for filing such papers. Such objection arising in relation thereto shall be considered by a contest board, composed of the Secretary of State, the Auditor and the Treasurer and two electors, to be appointed by the Governor, within 24 hours after the last day and hour for filing- the objections, and the decision of the majority of these officers shall be final. In case such objection is made, the objector shall, at the same time, notify the party, or parties, affected thereby and shall certify, under oath, to the Secretary of State, in what manner he has notified such party. If, for any reason, no decision shall be arrived at, within said time, the certificate” (or paper) “shall b» considered regular, &c.” (Italics by the Court.)
Section 61 (as re-enacted in the act of 1900) provides that the Secretary of State shall promulgate the- names of persons nominated, and section 65 et seq. (of the act of 1898 and as amended) impose upon that officer the duty of providing the ballots and having them distributed, etc.
Considering the various provisions of the law together, it is- clear that the otherwise mandatory duty of the Secretary of State to accept, as regular, nomination papers which are “in apparent conformity” with the law, ceases to be a duty whenever an objection is made to- such papers, in writing, within 72 hours after the last day allowed for filing them, and that, when such objection is made, his jurisdiction is for the time ousted and the matter is relegated to the contest board, the decision of a majority of which, upon the objection so made, is final. As the Secretary of State has no authority in the premises save that conferred by the law in question, and as the law, under the conditions stated, takes the matter out of his hands and provides that a particular tribunal shall finally decide whether this or that person is to be regarded as the nominee for a particular office, it follows that, when those conditions arise, the Secretary of State can neither be compelled by mandamus to review the decision so rendered nor to act in disregard of it. And this is virtually conceded in the position, taken by relator, that there was no contest before the tribunal established by the statute, and hence that there is nothing standing between the Secretary of State and the duty imposed upon him in cases where the papers are in apparent conformity to law and no objection is made to them. .Relator does not contend that there has been, in fact, no contest, but his learned counsel say that there has Been no contest which can be recognized as such, because (1) he was not notified, (2) because the objector was without interest or capacity to make the objections upon which the alleged or supposed contest was based, and (3) because the board went beyond the regularity of the papers and considered and decided the case upon questions of which it had no jurisdiction. .
As- to the first ground, relator, having appeared before the board, through his representative and having been fully heard, with *197 out complaining that hie had not received notice to appear, must be presumed either to have received notice or to have waived it, the fact, in all probability, being that he received the notice sent to him through the post office. As to the second ground the law provides that when objections to nomination papers are made, within a certain time and in a certain manner, they shall be “considered by the contest board,” and the right to make the objection is not confined to any particular individual or class. As to the third ground, all that we know of the basis of the board’s decision is derived from a comparison of the grounds of objection set up ■with the decision itself (which, without specification, sustains the objections), and from the attempt of relator and his associates to obtain and proceed upon, new papers (under section 58 of the act of 1898, which provides that “in case a candidate * * * shall cause his name to be withdrawn from nomination * * * or shall be found by the officers named in section 55 to have been irregularly nominated, the vacancy may be supplied * * * in the same manner in which the ■original nomination was made” — section 2 of Act No. 96, p: 138, of 1908, providing that the original nominating papers must be filed •on or before “the date on which the first primary election is held”), in which attempt they judicially averred that the protest filed by J. C. Henriques, Chairman, etc, “was considered and acted on by the protest board convened by the Governor, * * * that said board sustained said protest and declared said” (original) “nomination papers to be irregular,” from all of which it must be presumed that the decision of the board was .based upon the “irregularity” of the papers, ■originally and now relied on, in which aspect of the case its jurisdiction and the finality-of its judgment is conceded. From any point of view, however, it cannot with reason be said, nor can relator and his associates be heard to say, that there was no contest, and, considering the grounds relied on by them, in and for the purposes of the contest as actually held, we come back to the position of the Secretary of State, as respondent in this application for the writ of mandamus, and we conclude that, as between him and the contest board, it was for the board, not him to determine whether the parties to the contest had received the notice required by law, whether they, or either of them, had the right or capacity to appear, and whether, in view of the objections presented, the papers objected to were regular or irregular, and that, the decision of those questions being within the jurisdiction of the board, the Secretary of State was, and is, bound by such decision, and is as utterly without authority at this time to place the names of relator and his associates upon the ballot as if that authority had never been vested in him. • It is true that, unless the mandamus issues, commanding the Secretary of State to do that which the law does not authorize him to do, the relator and his associates are now without remedy, but that is entirely their own fault. The law provided them a remedy, and they neglected to avail themselves of it. The act of 1908 (No. 96, p. 138), requiring nominating papers to be filed on or before, the holding of the first primary election, was approved July 1, 1908, and the first primary was not held until September 1st. Relator and his associates, therefore, had two months within which to. file and test their original papers and to file new ones, if necessary, but they chose to wait until September 1st before filing their original papers, and thus cut themselves off from the opportunity of filing new ones when the necessity arose. The complaint that they have' now no remedy is therefore, frivolous.
Judgment affirmed.
NIOHOLLS, J., absent

 Post, p. 199.