(71 South. 496)

No. 21901.

STATE ex rel. LABBE et al. v. MILLSAPS, Secretary of State.

In re STATE ex rel. PROGRESSIVE PARTY OF STATE OF LOUISIANA et al.

(April 8, 1916.)

*(Syllabus by the Court.)*

1. ELECTIONS ☜154(1)—NOMINATIONS—CONTEST BOARD—CONCLUSIVENESS OF DECISIONS.

In the terms of section 55 of Act No. 152 of 1898, as amended by Act No. 132 of 1900, the decision of a majority of the members of the contest board in a contest of the right of a candidate to the nomination of a political party is final and not subject to review by the courts.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 136; Dec. Dig. ☜154(1).]

2. ELECTIONS ☜153 — NOMINATIONS — CONTEST BOARD—JURISDICTION.

The contest board created by section 55 of Act No. 152 of 1898 has exclusive jurisdiction to consider and decide a contest filed by any person having an interest in contesting the nomination of a candidate for a political office, and is not limited to contests filed by candidates claiming the nomination by the same political party for the same office.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 135; Dec. Dig. ☜153.]

3. ELECTIONS ☜151 — NOMINATIONS — CONTESTS—"PARTY."

In the requirement in section 55 of Act No. 152 of 1898, that the person contesting the regularity of a certificate of nomination shall notify the party or parties affected thereby, the term "party" does not mean the political party of the contestee. It means the individual or party whose right to the nomination is contested.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 133; Dec. Dig. ☜151.

For other definitions, see Words and Phrases, First and Second Series, Party.]

Application by the State, on the relation of D. C. Labbe and others, for writ of mandamus to W. F. Millsaps, Secretary of State, with application also by the State, on the relation of the Progressive Party of the State of Louisiana, for writ of mandamus. Writ denied, and application dismissed.

L. H. Burns, H. S. Suthon, and Esmond Phelps, all of New Orleans, for relators. H. F. Brunot, of Baton Rouge, pro se.

O'NIELL, J. The relators presented to the judge of the district court of the parish of East Baton Rouge a petition for a writ of mandamus directed to the secretary of state, commanding him to place upon the official ballot to be voted in the parish of St. Martin on the 18th of April, 1916, the names of the relators as candidates for the following offices, nominees of the Progressive party, respectively, viz.: For sheriff, D. C. Labbe, for coroner, Dr. Clarence W. Boring, and for assessor, Onezime Calais, Jr. They alleged that the relator, the Progressive Party of the State of Louisiana, appearing through its state central committee and the secretary of said committee, was a body politic, organized and existing under and by virtue of the statutes of this state, being a political party with a franchise and the right to nominate its candidates and to have their names printed on the official ballot under its party emblem; that it had nominated a candidate for Governor and another for Lieutenant Governor, and local candidates in several parishes and senatorial and representative districts, and had an interest in furthering the candidacy of all of its nominees; and that its right to nominate candidates and to have their names printed on the official ballot was founded upon the statutes of this state and had always been conceded since it had polled the proportion of votes required to make it a political party. They alleged that they, the candidates for the aforesaid offices in the parish of St. Martin, had been regularly nominated at a convention composed of delegates regularly elected from among the members of the Progressive party, to be voted for at the general election to be held on the 18th of April, 1916; that their nominations were certified to by the chairman and secretary of the nominating convention, and that the certificates of nomination in proper form were transmitted to the secretary of state within the time and in the manner prescribed by law; that each of said candidates was the only nominee of the Progressive party for each office, respectively, and that, therefore, it was the ministerial duty of the secretary of state to place the names of the said candidates on the official ballot, but that the secretary of state refused to place the names of said candidates on the official ballot, basing his refusal on a ruling of the contest board organized under authority of section 55 of Act No. 152 of 1898, and stating that the contest board had met and considered a protest against the candidacy or nomination of the relators, and had sustained a protest and ordered him, the secretary of state, not to place the names of the relators on the official ballot as the candidates or nominees of the Progressive party, and that its ruling was final and binding on him, the secretary of state. They alleged that the protests considered and sustained by the board of contest were made and filed only by the Democratic candidates for the aforesaid offices, respectively; that no opposition or contest was made by the Democratic party, nor by any contestant claiming a right to the nomination of the Progressive party; and that, therefore, no contest had been made before the board of contest as contemplated by law. They alleged that the contest board had no jurisdiction to decide or consider the contest or complaint made by the Democratic nominees, but had arbitrarily assumed the right to destroy the franchise of the Progressive party and, in effect, to name the officials of the parish of St. Martin for the next four years; that the exercise of that power was arbitrary, oppressive, ultra vires, null, and void, and was in violation of the provisions of the law governing the secretary of state, and that that official had no right to act upon the ruling of the board of contest. They averred that the right of the Progressive party to nominate candidates and to have their names placed on the official ballot was

granted and guaranteed by Act No. 48 of 1914, amending the election law (Act No. 152 of 1898); that it was never the intent or purpose of the statute creating the board of contest to give that board authority to deny the right of a political party to make nominations as such; and that, if that ever was the intent of the general election law, it was repealed and superseded by Act No. 48 of 1914. The relators averred finally that, if the board of contest had jurisdiction in the premises, it was not exercised in a lawful manner, because there was no notice served upon the Progressive party, or upon its chairman or secretary, of any protest or contest of the right of the party to nominate candidates for office in the parish of St. Martin.

The judge of the district court refused to issue an alternative writ of mandamus and declined to exercise jurisdiction in the case, on the ground that the contest was within the jurisdiction of the board of contest exclusively, and that the ruling of the board was final and not subject to review by the courts. Thereupon the relators made application to this court for a writ of mandamus to compel the judge of the district court of the parish of East Baton Rouge to exercise jurisdiction and issue the mandamus to the secretary of state. In their petition to this court, they make the same allegations that were made in the petition filed in the district court.

In answer to the rule to show cause why the relief prayed for by the relators should not be granted, the district judge admits all of the allegations of fact contained in their petition, but denies the legal conclusions drawn therefrom by the relators. He alleges that, in refusing to issue the writ of mandamus, he accepted as true the relators' allegation that the board of contest had met and considered and sustained a contest of the nomination of the relators and had ordered the secretary of state not to place their names on the official ballot. The respondent judge avers that he assumed that the board of contest had considered and acted upon the question of regularity or irregularity of the certificates of nomination and had sustained the contest on legal grounds; that he considered that the acts complained of were those of the board of contest and not of the secretary of state; that he (the district judge) had no jurisdiction or authority to compel the secretary of state to do what the board of contest had forbidden; and that he had no jurisdiction or authority to control the board in the exercise of the discretion which the law had vested in the members of the board exclusively.

The pleadings do not inform us of the cause or ground of the contest before the contest board; nor was the district judge, nor are we, called upon to review the ruling of the board.

[1] The relators' counsel admit in their brief filed in this court that, if the board of contest had jurisdiction to consider and decide the protest or contest of their right to the nomination in question, the decision of the board was final and the district court had no jurisdiction in the premises. They contend, however, that the statute defining the jurisdiction of the board of contest limits it to cases where there are a greater number of claimants of the nomination of the same party for the same office than there are officers to be elected.

[2] It is true that section 56 of Act No. 152 of 1898, as amended by Act No. 132 of 1900, declaring that it shall be the duty of the contest board to determine which candidate, if any, is entitled to a party nomination, expressly mentions only contests in which a greater number of candidates claims the nomination of the same party than there are officers to be elected. But this section of the law expressly declares that the contest board shall have authority to deter-

mine not only which candidate, but whether any candidate, is entitled to the nomination. The statute, therefore, plainly contemplates that the right of any and all candidates claiming the nomination of the same party for the same office may be contested, and that the board shall have jurisdiction to determine whether any of the candidates is entitled to the nomination; from which it follows that the regularity of a certificate of nomination may be contested by any person having an interest in the contest, though not claiming the nomination from the same party.

Section 55 of the statute, as amended, declares that certificates of nomination that appear to be in conformity with the provisions of the act shall be deemed to be regular unless an objection to their regularity is made in writing within 72 hours after the last day allowed by law for filing the certificates of nomination, and that objections arising in relation thereto shall be considered by the contest board, composed of the secretary of state, the auditor, the treasurer, and two electors to be appointed by the Governor within 24 hours after the last day and hour allowed for the filing of objections; and it provides that the decision of a majority of the members of the board shall be final. This section of the law, creating the contest board and giving it exclusive and final jurisdiction to consider and decide contests arising in relation to the regularity of certificates of nomination, does not, expressly nor by implication, limit its jurisdiction to contests filed by candidates of the same party for the same office; and we have no authority to legislate on this subject.

In the case of State ex rel. Burke et al. v. Foster, Judge, et al., 111 La. 939, 36 South. 32, it was said:

"The decision of disputes as to party nominations rests with the party whose nomination is claimed, in the absence of statutory regulations to the contrary. The jurisdiction of courts, in such matters, is purely statutory. Act No. 152,

p. 266, of 1898, confers no jurisdiction whatever on the courts, but creates a board of contest, whose decision is made final on all questions within its cognizance."

In the case of State ex rel. Tebault v. John T. Michel, Secretary of State, 122 La. 188, 47 South. 460, the regularity of the nomination of a candidate for mayor of the city of New Orleans by nomination papers of the Independent Democratic League was contested by James C. Henriques as citizen, elector, Democrat, and chairman of the Democratic executive committee. The board of contest considered and sustained the contest, although it was not made by a candidate claiming the nomination of the same party for the same office. The secretary of state, therefore, refused to place the name of the candidate of the Independent Democratic League on the official ballot; and, in the suit to compel him to place the name of the candidate on the official ballot, it was held that he could not be compelled by mandamus to do that which the law did not authorize him to do. One of the complaints before this court was that:

"The objector was without interest or capacity to make the objections upon which the alleged or supposed contest was based."

To which this court replied:

"The right to make the objections is not confined to any particular individual or class."

The relators' contention that sections 55 and 56 of Act 152 of 1898 were amended by Act No. 48 of 1914, so as to deprive the contest board of its jurisdiction of a contest filed by another person than a candidate for the nomination of the same party for the same office, or to vest in the courts jurisdiction to reverse the rulings of the contest board in such cases, is not well founded. The Act of 1914 did not change the law in that respect. It amended only sections 49 and 64 of Act No. 152 of 1898. Section 49 relates only to nominations by convention, and makes no reference whatever to contests or to the contest board. It originally

provided that nominations might be made by a convention of delegates representing a political party that had polled 20 per cent. of the entire vote cast in the last general election preceding the holding of such convention. It was amended by Act No. 132 of 1900 so as to reduce the requirement to the polling of 10 per cent. of the entire vote cast at the last state election preceding the holding of the convention; and it was further amended by Act No. 48 of 1914 so as to provide that a political party might nominate candidates by convention if it had polled at least 10 per cent. of the entire vote cast at the last preceding state election or United States presidential election. Section 64 of Act No. 152 of 1898, as amended by the Acts of 1900 and 1914, relates to the same subject. It limits the number of qualified voters of the electoral district or division necessary to constitute a caucus or to make a nomination or choose delegates to a nominating convention. Hence the law vesting exclusive jurisdiction in the contest board to determine the regularity of certificates of nomination has not been altered or amended since the decisions were rendered by this court in the cases cited above.

[3] The complaint that no notice of the contest was served upon the Progressive Party or upon the chairman or secretary of the state central committee of that party is without merit. The statute (section 55 of Act No. 152 of 1898, as amended by Act No. 132 of 1900) only requires that the objector to the regularity of a certificate of nomination shall notify the party or parties affected thereby, and shall certify under oath to the secretary of state in what manner he has notified such party. We interpret this to mean that the objector or contestor shall notify the candidate whose certificate of nomination is contested. If the Legislature had intended to require notice of a contest to be given to the chairman or secretary of the State Central Committee of the political party whose candidate's nomination is contested, the requirement would have been expressed in plain terms. The term "party or parties affected thereby" does not mean political party or parties in the sense in which the relators interpret it.

The complaint or argument that this interpretation of the law allows the contest board to perpetuate the dominant party in power and, in some instances, to control the elections, is an objection to the system of party nominations, to be addressed to the Legislature, not the courts.

Our conclusion is that the district judge was without jurisdiction to compel the secretary of state to place the names of the relators upon the official ballot, and that the refusal to issue the alternative writ of mandamus was in accordance with the law.

For the reasons assigned, the relief prayed for is denied, and the relators' application is dismissed.