NICHOLLS, J.
On October 25, 1904, the judge of the Twenty-Third judicial district court for the parish of St. Mary appointed W. R. Gates tutor ad hoc to represent the minors, Joseph and Sheehan Jabour.
That action was based upon a petition presented to him by C. F. Borah, averring that he was a member of the bar of that court; that he had been consulted by friends and relatives of Joseph and Sheehan Jabour (minor children, issue of the marriage of Mrs. Mary Zaroof Alice Abdallah Jabour with Elias Jabour, the deceased) with reference to their property rights and interest in the succession of their deceased father; that there were proceedings filed in that court, entitled “Succession of Elias Jabour,” No. 3,113 of its docket, wherein it was pretended to appoint Mrs. Mary Abdallah Jabour, their mother, natural tutrix of the said minors, and Esbore El Bahry their undertutor; that no one had been legally appointed either tutrix or undertutor to said minors; that neither the tutor nor the undertutor had ever taken the oath required of him or her; that, while there was an oath filed, the record purporting to be executed before C. A. O’Niell, notary public, yet neither the natural tutrix nor the undertutor ever subscribed the oath in his presence or was ever sworn to fulfill the trust that they are represented to fulfill; that immediately upon this pretended qualification of the tutrix and undertutor the Bank of Patterson, acting through the same attorneys who pretended to have qualified the tutrix and undertutor, sued out executory process on a *542 mortgage note held by said bank, and caused all of the property belonging to the said estate to be seized in satisfaction of mortgage; that this act was in collusion with and by and between the Bank of Patterson, represented by its cashier, B. J. Morey, and other officers and the attorneys, who pretend to have represented both the bank and the widow and heirs, and that the minors’ property had by this means been sold under order of court, and their rights and interest therein divested, without any due process of law, without any legal proceedings against them; and that the widow and pretended tutrix of the minor children was acting in collusion with said bank, and was promised and. received a consideration to remain quiescent and permit the bank to sell the property under its mortgage, all to the injury and detriment of the minor children, who were not represented, and against whom the bank and the tutrix had conspired to defraud them' of their rights in and to the property.
That the only property left to the said minor children was the one-half interest in the property sold, which was worth fully $1,000 or $1,200, out of which they could have protected themselves to the extent of $1,000 as minors in necessitous circumstances, had they had any knowledge of the pretended sale of said property.
That as there had been no undertutor legally qualified to said minors, and as the tutrix who pretended to have qualified was acting in collusion and in conjunction with the bank in defrauding the minors of their property and rights in the premises, it was necessary that a tutor ad hoe be appointed to represent said minors, in order that a suit might be filed to rescind the sale of said property; and he asked and suggested that the judge appoint a tutor ad hoe to represent said minors, that he might proceed at once to set aside said sale and protect the right of the minors before some innocent third person acquired the property. He prayed that the court appoint a tutor ad hoc to represent the minors in the filing of said suit. Gates qualified as tutor ad hoc and instituted a suit as suggested; the cause of action being substantially the state of facts set out in Borah’s petition, with more definite specifications. It was specially averred that the minors were in necessitous circumstances and that the minors were entitled to $1,000 by preference out of said property. It was also alleged that, after the alleged agreement had been made between the widow of Jabour and the bank, the latter caused its attorneys to have the widow appointed natural tutrix in order to have service made upon her; that these attorneys never at any time represented either the widow or heirs, and especially the minor children, and said children were by this collusion and fraud between their mother and the bank never represented in the premises, and never had any legal advice, either directly or through their natural tutrix, as to their rights in the premises, and were kept in utter ignorance of their rights until the sale of the property had been made, and that all the costs of the sale were paid by the bank. It was further alleged that, if any advice was ever given to their mother and pretended tutrix, it had been concealed from the minors; that all of the parties were Syrians, unacquainted with our language, and no effort had ever been made to acquaint them with their rights in the premises or of the fact that they were being divested of their property; that when the document purporting to be his oath was submitted to the undertutor for his signature, the only thing told him was that the attorney had stated it was for the protection of the minor children, when in fact it was to have their property sold and their rights thereby defeated; that no one explained to j either the tutor or the undertutor the nature ! of the document they were filing. It was *544 further alleged that, in consideration of the widow’s agreeing to make no defense for herself or her children, the bank would pay her $50 in cash and permit her to remain on the property for a fixed length of time, and would additionally return to her two notes of Elias Jabour, amounting to $470; that the two notes that the bank agreed to return to the widow could be of no consideration to the minors, as they were worthless, as there was no property out of which to collect the same, and they were worthless in the hands of the bank, if not included in the mortgage note declared on by it. It was averred that the notice to pay, if otherwise legal, was not a valid notice for the reasons aforesaid, and for the further reason that it ordered the payment of a note of which it declared the bank to be the holder on the 31st of October, 1904, and payable on the 31st day of October, 1900, which was legally impossible, and conveyed no notice upon which an action would be predicated, and for this and further reasons the seizure of the property and the sale thereunder should be annulled and set aside, and the property restored to the succession of Elias Jabour, and the mortgage rights of the bank reinstated, and the status quo of said succession restored to all parties as it existed before said illegal seizure and sale, without prejudice to the rights of said minors.
The prayer made in view of the premises was that the Bank of Patterson and Mary Alice Jabour be cited, and that after due proceedings there be judgment decreeing the nullity of said sale and ordering the said property to be restored to the succession of Elias Jabour unaffected by said seizure, and decreeing the nullity of all the proceedings in said suit.
The bank excepted that the plaintiff was without any right, authority, or capacity to institute the action; that under the allegations of the petition the undertutor would ‘ be the only person authorized to institute the suit, if the tutrix was disqualified or should refuse; that no action could be instituted by a tutor ad hoc, except proceedings for the removal of the tutor, which could only be conducted contradictorily with all parties concerned; that it did not appear that any demand) was made upon either the tutrix or undertutor to institute the suit, or any proceedings had to require either of them to do so; that the capacity of the tutrix herself could not be collaterally attacked or questioned. The exception was overruled. A judgment by default was entered against Mrs Jabour. The bank answered, pleading first the general issue. It then averred that Elias Jabour had died several years before, leaving a widow and the two minor children named; that the widow was qualified at her own solicitation as the tutrix of her children; that after the death of her husband the widow accepted the community, retained possession as widow in community and tutrix, and assumed all of the debts and liabilities of the succession; that she paid interest on the note held by the bank, and received in money, stock in trade in a store belonging to the community, and other movables of the estate, and appropriated them to her own use and benefit, and that of her minor children, to the value of more than $1,000, and that the amount of the widow’s dower of $1,000, if ever due, was fully satisfied, and the minors had no claim to any sum or privilege as surviving minors in necessitous circumstances; that the property in question was not worth the amount of respondent’s mortgage debt, and did) not sell for a sufficient sum to satisfy it; that the minor children had no right nor interest to contest the sale of the widow’s half of the property, and had no interest to contest the sale of the other half belonging to the estate of Elias Jabour, because they had no right of action to claim *546 the $1,000 as surviving minor children, their mother being then and still living.
It denied that any deception was practiced upon the widow and natural tutrix, either by the attorneys or other, persons connected with the bank. It specially denied that there was ever any collusion or fraud practiced between the cashier of the bank and the surviving widow; that the allegations of fraud and collusion were without any foundation whatever, and were made by the attorney, who procured the appointment of a tutor ad hoe for his own mercenary motives and in a spirit of malice and revenge towards the bank and its officers. It admitted being the holder and) owner of the mortgage note referred to, and alleged that if the notice to pay issued by the clerk stated that the note sued on was dated on the 31st day of October, 1904, and made payable on the 31st day of October, 1900, it was,palpable error of the clerk, which was so plain as not to mislead or deceive, and sufficiently identified the note in said notice, and that said alleged cause of nullity was frivolous. It alleged that all legal formalities had been complied with, and that the sale was legally made and not attended with any irregularities or illegalities. It prayed for the dismissal of plaintiff’s action at his costs. The district court rendered judgment in favor of the plaintiff (tutor ad hoc of the minors) and against the defendants, annulling, rescinding, and setting aside the sale by the sheriff of the parish of St. Mary to the Bank of Patterson, resulting from the writ of seizure issued in suit entitled “Bank of Patterson v. Alice Abdallah Jabour, Widow,” and decreeing that the property described in said sale be restored to the succession of Elias Jabour unaffected by said seizure, and that all proceedings leading up to said seizure and sale be annulled and set aside as prayed for by plaintiff, and that the bank pay all costs in that suit, as well as the suit before the court.
The bank appealed to the Court of Appeal. That court affirmed the judgment appealed from without prejudice to the claims of the Bank of Patterson against the late Elias Jabour, and that the claim of the minors for the $1,000 homestead be left for future adjudication. It ordered the appellant to pay the costs.
On application of the Bank of Patterson the case has been brought before this court for review.
The exception of the defendant to the right of the 'tutor ad hoc to bring this action was not well taken. He was appointed by the district judge for that express purpose. The judge had the legal power and authority to make the appointment and direct the investigation asked, upon representation deemed by him sufficiently grounded, indicating that wrong and injury to minors were threatened at the hands of those believed to be their natural protectors. District judges have great discretion in such matters, which should be recognized in limine, prima facie to have been properly exercised. Minors have been always referred to as wards of the court. If the court’s action had been improperly invoked, the party who had caused it to act will in proper cases be later made responsible for the consequences.
In the case at bar, if the allegations made by Mr. Borah were true, the court could not well have acted in a manner different from that which it pursued. State ex rel. Alba v. Sommerville, Judge, 111 La. 1015, 36 South. 104; Succession of Walker, 32 La. Ann. 321; In the Matter of the Minor Victoria Fortier, 31 La. Ann. 51.
It is suggested by the bank that the under-tutor should have been -directed to have brought the action; but, under the condition of affairs alleged to exist, there was in law no undertutor, as it was claimed that no one- *548 had qualified as such. The status of the party appearing on the record to have qualified as undertutor was called in question.' It is claimed that the judgment appointing the tutrix and undertutor could not be collaterally attacked. We do not understand this suit as attacking the order of the court appointing the tutrix and undertutor, but as disputing the fact that the parties appointed had qualified under the order of appointment, and as asserting that therefore the proceedings based upon the theory that they had so qualified were absolutely null for want of the proper party defendant. Eor the purpose of setting aside those proceedings, the mother (to whom the letter of tutorship had issued) was forced to be considered temporarily as the legal tutrix. The only way to set aside her status was by proceeding against her contradictorily as a defendant. We do not see what proceeding more direct could have been resorted to than that which was adopted*. All the parties concerned were before the court, the precise issues on which the proceedings were attacked were set out, and then nullity asked contradictorily with the only parties in interest and parties to the proceedings which led up to the sale and purchase by the bank of the mortgaged property. The claim that a demand shall have been made upon the undertutor to bring the action has been already answered by stating that there was no undertutor, if the allegations of Mr. Borah’s petition were true. The mother was charged to have acted throughout in collusion with the bank. She was a necessary party defendant to the suit, if that allegation was true.
We finally reach the merits of the case. It is not seriously asserted that either the tutrix or the undertutor ever took the oath required by law to make final the order for their appointment. If this be true, the proceedings in the executory process must necessarily fail. The letters for the mother issued upon error of fact that she had taken such oath. There are no third persons before the court claiming rights based upon the faith of the court’s orders in the case. The attorney for the bank in these proceedings was the nptary who it was supposed had administered the oath to the mother. He must certainly have been aware that as a fact he had not done so, and that her signature to an oath was not the equivalent of the taking of the oath. The mere belief, which the attorney of the bank may have had, that such a signature would be sufficient in that case, as it was to be a consent proceeding upon a conventional mortgage, would not do away with the radical defect of the nonexistence of the fact itself that an oath was administered to the mother. The knowledge by the attorney of the bank as to knowledge of the defect must be held to have been knowledge by the bank itself of the same fact.
We do not think it was necessary for the setting aside of the proceeding and the sale made thereunder on that particular ground for either fraud or injury to have been alleged or shown. The objection taken was really that there had been no citation of the defendant in the case.
The absence of citation carried with it, ipso facto, the nullity of the judgment. Code Prac. art. 206; Holmes v. Holmes, 9 La. 348.
An heir has (as such) sufficient interest to invoke such nullity, independently of fraud or injury. Woods v. Woods, 13 La. Ann. 190.
The nullity of the sale does not carry with it the nullity of all of the proceedings anterior to the same. We find no ground for setting aside the order of the court appointing the tutrix and the undertutor. The parties named have not qualified under the orders, but they have the right to do so still, should they desire. We have no reason for supposing that the proceedings taken to obtain the orders were taken without the consent of the mother, express or implied; nor would we be justified, under the evidence adduced on the *550 trial of this cause, in saying that fraud was attempted to he perpetrated hy the hank or its officers. No attack has heen made on the mortgage held by the hank, and no ground has heen shown for setting the sale aside, other than the want of citation. Whether the minors would have heen injured hy the •sale, had it not heen set aside, is a matter upon which we have not formed an opinion and can express none. What actual interest they may have in the premises will, we presume, he developed hereafter. Plaintiff objected to the introduction hy defendant of testimony looking to the ascertainment at the present stage of the proceedings of the situation as involving the rights of the widow or minors in necessitous circumstances to $1,000.
We see no ground for annulling and dismissing the proceedings for executory process in entirety. They must be permitted to remain on file, but the plaintiff must modify the proceedings, so as to make them conform to the fact that the mother was not the qualified tutrix of her minor children at the date of the various orders and notices therein given.
For the reasons herein assigned it is hereby ordered, adjudged, and- decreed that the judgments of the district court and of the Court of Appeal, setting aside the sale made by the sheriff of the parish of St. Mary under the executory process which issued at the instance of the Bank of Patterson, he and they are hereby affirmed; but matters are decreed to be replaced and restored to the situation existing just after the petition for executory process was filed. It is further ordered and decreed that the petition for executory process he reinstated on the docket of the district court for the parish of St. Mary, and this cause he remanded to that district court for further proceedings in conformity to the views herein expressed. Costs of the Court of Appeal and costs of the present proceeding to he paid by the plaintiff and appellee. Costs of the district court to he paid by the defendant, the Bank of Patterson.