Statement of the Case.
MONROE, J.
The state, through the Attorney General, brings this suit for the re *209 covery of some 11,000 acres of land, lying in the parish of Caddo and formerly constituting the bed of Cross Lake. The grounds relied on are, substantially, as follows:
(1) That, by Act No. 74, p. 95, of 1892, certain swamp lands and lands acquired by the state for unpaid taxes were granted to the board of commissioners of the Caddo levee district (a( public corporation created for drainage and levee purposes), subject to the condition that the title should vest in the board only upon the execution, by the State Auditor and Register of the State Land Office, and the registration, in the parishes where the lands lie, of deeds of conveyance thereto; that the lands here claimed were not included in the grant, but that the board, assuming that they were so included, undertook to convey them to defendant’s authors, and that the attempted conveyance was, and is, of no effect, for the reason that the board was without title and had no authority in the premises.
(2) That, even if it be held that the lands in question were included within the terms of the act of 1892, no title thereto ever vested in said board, for the reason that no deeds of conveyance have ever been executed or recorded as required by said act, and hence defendant can have acquired no title through any conveyance attempted by said board.
(3) That, should the court find that said lands were within the terms of said act and that said board acquired title to the same, the conveyance to defendant’s authors was a disguised donation of public property, the price purporting to have been paid having been 10 cents an acre, whereas the lands were worth not less than $2 an acre, and that defendant’s authors are, substantially, the same individuals who now compose the defendant corporation.
(4) That, should the grounds stated not be sustained, the attempted conveyance should be decreed of no effect, because it purports to be a sale for cash, whereas no price whatever has been paid.
(5)That, should none of the grounds thus relied on be found good, the alleged sale should be annulled for lesion beyond moiety.
Defendant, by way of exception, averred that the allegations of the petition are inconsistent, and that they disclose no cause of action, and, further, pleaded res judicata; and, the exceptions having been overruled, answered that the lands claimed were included in the grant contained in the act of 1892, that the title was thereby vested in the levee board, and that it (defendant) acquired, through mesne conveyances, from said board; that the price paid was sound, that the transaction was a sale, and not a donation, and that the attack made thereon, on the ground of lesion beyond moiety, is barred by the prescription of four years. And defendant further pleaded the prescription of five and ten years, and, alleging that it had been in actual possession of the lands in question since the date of its purchase, to the knowledge and with the consent of plaintiff, and had paid the taxes thereon, pleaded estoppel. It further alleged that, the lands having been conveyed by plaintiff to the levee board, and by the board to its authors, this attempt to recover them, if successful, would impair the obligations of a contract, in violation of the state and federal Constitutions. And, finally, it alleged that it had paid $751.09 in the way of taxes, for which it prays judgment, with interest, in the event of an adverse ruling upon the other matters thus set up. It was admitted on the trial, that:
“No deeds of conveyance of the lands in controversy have been executed by the Register of the State Land Office, or Auditor, or either of them, to the board of commissioners of the Cad-do ievee district, and nothing of the bind has been recorded in the conveyance books in Caddo parish, up to this date.”
The facts necessary to an understanding of the case are as follows: The Caddo levee board was created by Act No. 74, p. 95, of *211 1892, which also created a board of commissioners, and charged it with the administration of the affairs of the district.
Section 9 of that act reads:
“Sec. 9. * * * That, in order to provide additional means to carry out the purpose of this act and to furnish resources to enable the said board to assist in developing, establishing and completing the levee system in the said district, all lands, now belonging, or that may hereafter belong, to the state, and embraced within the limits of the levee district, as herein constituted, shall be, and the same are, hereby, granted, donated, conveyed and delivered into the said board of commissioners of the Caddo levee district, whether the said lands, or parts of lands, were originally granted by the Congress of the United States to the state of Louisiana, or whether the said lands have been, or may hereafter be, forfeited, or bought in, by, or for, or sold to, the state, at tax sale, for nonpayment of taxes; where the state has, or may hereafter, become the owner of lands, by, or through tax sales, conveyances thereof shall only be made to the said board * * * after the period of redemption shall have expired; provided, however, any and all former owners of lands which have been forfeited to purchasers by, or sold to, the state, for nonpayment of taxes, may, at any time, within six months, next ensuing after the passage of this act, redeem the said lands, or all of them, upon paying, to the Treasúrer of this state, all taxes, costs and penalties due thereon, down to the date of said redemption, but such redemption shall be deemed and shall be taken to be sales of lands, by the state, and all and every sum, or sums, of money, so received, shall be placed to the credit of the Caddo levee district. After the expiration of the said six months, it shall be the duty of the Auditor and Register * * *, on behalf of, and in the name of, the state, to convey to the said board * * *, by proper instruments of conveyance, all lands hereby granted, or intended to be granted and conveyed, to the said board, whenever, from time to time, the said Auditor and Register * * *, or either of them, shall be requested to do so by the said board * * * or by the president thereof, and, thereafter, the said president * * * shall cause the said conveyances to be properly recorded in the conveyance offices of the respective parishes wherein the lands are located, and, when the said conveyances are so recorded, the title to the said lands, with the possession thereof, shall, from thenceforth, vest absolutely, in the said board * * *, its successors or grantees. The said lands shall be exempted from taxes after being conveyed to, and while they remain in the possession or under the control of, the said board. The said board * * * shall have the power and authority to sell, mortgage and pledge, or otherwise dispose or, the said lands, in such quantities and at such times and at such prices as to the board may seem proper. But all proceeds derived therefrom shall be deposited in the state treasury to the credit of the Caddo levee district and shall be drawn only upon the warrants of the president of the said board, properly attested, as provided in this act.”
The lands here claimed constituted the bed of a body of water, near Shreveport, known as “Cross Lake,” which, in consequence of the removal of a raft, which for many years obstructed Red river, and the reconstruction of the levees, is drying up, leaving said lands available for farming purposes, the 11,000 acres in controversy being, at the time of the trial in the district court, worth from $50,-000 to $100,000, though they were not worth that much at the date of the transaction out of which this litigation has arisen. It appears that, in August, 1895, the levee board (meaning the board of commissioners of the Caddo levee district) adopted a resolution authorizing the sale of the lands in question to the “Gun Club” for $1,100 (or, say, 10 cents an acre for 11,000 acres) cash; and that, there being no such corporate entity as the “Gun Club,” the secretary of the board was handed three cheeks signed by individuals, for amounts aggregating that specified in the resolution. A controversy then arose between the individuals constituting the gun club and Others, constituting the rod and gun club, as to which organization was intended by the resolution, and the secretary of the board was instructed not to collect the cheeks which had. been handed to him (and which were, afterwards, returned to the drawers). The board, about that time, however, appears to have executed an instrument conveying the lands to the individuals constituting the gun club, who then incorporated themselves under the name of the “Shreveport Gun Club,” and transferred the lands to the corporation so created, the president of the board ratifying the transfer. Shortly afterwards (on September 20, 1895) the board adopted a resolution instructing its attorney to annul the conveyance which had thus been made, and a *213 suit was then instituted by the rod and gun club, or the individuals so styling themselves, to which the gun club and the board were made, or became, parties, and which resulted in a judgment in this court confirming the conveyance in question. Rod & Gun Club v. Board, 48 La. Ann. 1081, 20 South. 293. The members of the Shreveport Gun Club then appear to have organized the corporation now before the court as defendant, and to have transferred the land in dispute to it. The transcript does not contain the resolution authorizing the conveyance of the lands, or the act of conveyance, or the act of ratification (by the president of the board), but it does contain a copy of the resolution instructing the attorneys of the board to annul the conveyance, and it also shows that on September 1, 1896, Mr. Jacobs (one of the grantees) appeared before the board and proposed to pay for lake lands sold to the gun club, “provided the money be deposited subject to title being perfected”; that the board instructed its secretary “to make a special deposit of the $1,100, subject to above condition” ; that on September 2, 1896, Mr. Jacobs, in his capacity as president of the First National Bank of Shreveport, issued a certificate reading:
“The Caddo levee board has deposited in this bank eleven hundred dollars, payable to the order of the Caddo levee board, in current funds, on return of this certificate, properly indorsed, and when the title to the Cross Lake lands, sold by said board to W. B. Jacobs et als., shall be made perfect and cleared of any cloud.”
Thereafter, from time to time, Mr. Jacobs appeared before the board and requested that action be taken in the matter of clearing the title, and in December, 1901, he and Levi Cooper made a proposition to pay $3,500 additional for the lands, which the board accepted, thereupon authorizing its president “to take proper steps to perfect the title.” The steps taken were, however, ineffectual, and in 1902 the General Assembly passed an act (Acts 1902, p. 324, No. 171) authorizing the Register of the State Land Office to sell the Cross Lake lands “at, not less than, $& an acre, nor, in greater quantities than 320 acres to any one person,” preference to be given to bona fide settlers, and further providing:
“Sec. 4. * * * That Act No. 74 * * * of 1892, and Act No. 160, of * * * 1900, be. and the same are, hereby, repealed, in so Ear as they may, in any way, whatever, affect any of the lands described herein, the same never having been transferred by the Register of the State Land Office and the State Auditor, nor either of them, by any instrument of conveyance from the state, as required by said act, to complete the title of the same.”
And thereafter, so far as the defendant now before the court is concerned, the matter remained in statu quo until 1906, when this suit was brought. There was j. dgment in the district court in favor of defendant, and the state has appealed.
Opinion.
In our opinion, the levee board acquired no title to the lands in dispute under the act of 1892, because no deed of conveyance thereto was ever executed by the Auditor and Register, or either of them, and, of course, no such deed was ever recorded, and as for the same reason, the board acquired no title under Act No. 160, p. 242, of 1900, the argument that the title acquired under that act inured to the benefit of the defendant has nothing to rest on. This conclusion renders it unnecessary to consider the other issues presented by the pleadings, since, even were it conceded that the lands were included within the terms of the act of 1892, if it be true that the title did not vest in the board, and that the execution and registry of the deed of conveyance was necessary to accomplish that result, such concession could not affect the judgment to be herein rendered. And so, if it be true that the board acquired no title to the land, then no judgment rendered in a suit to which it may have been a party, but *215 to which the owner of the land was not a party, can support a plea of res judicata as .against the latter; and it is wholly immaterial whether the board attempted to sell the land or to give it away, or whether it received an amount agreed to be paid or received nothing. Our reasons for the conclusion that the board acquired no title, and could therefore convey none, predicated on the admitted fact that no deed of conveyance to the lands in question has ever been executed by the auditor or register, are, briefly, as follows:
Counsel for defendant concede that the statutory provisions upon the subject of the execution and registry of acts of conveyance relate to the lands acquired by the state by reasoh of the nonpayment of the taxes due on them, but they argue that those provisions have no bearing upon the swamp or other lands embraced within the terms of the statute. This is, at least, an admission that, quoad (what, for convenience, we will call) the “tax lands,” the grant contained in the statute is not a grant in praesenti. The question, then, is, does it purport to vest title in praesenti to any other lands?
The section of the law which we are interpreting begins with a long sentence, granting to the board “all lands, now belonging, or that may hereafter belong, to the state” (and embraced within the district); then using language which is said to confine the grant to swamp and tax lands (as contradistinguished from what are called “sovereignty” lands); then qualifying the grant by saying that tax lands shall be conveyed to the board only after the period of redemption shall have expired, and providing that the former owners may redeem within six months, and that the money so realized shall be paid into the state treasury and placed to the credit of the levee board — and there the sentence ends. The plain, indisputable meaning, so far, therefore, is that the grant of the tax lands, at all events, is not a grant in prsesenti. No language could convey that idea more clearly, and the language used is rounded with a period. Then we have a new sentence which has no more necessary or grammatical connection with tax lands than with swamp lands, and which by its terms deals with both (and with any other lands which might be considered included in the grant). It reads:
“After the expiration of the said six months [referring to the six months within which the former owners of tax lands are allowed to redeem] it shall be the duty of the Auditor and Register, on behalf, and in the name, of the state, to convey to the said board * * *, by proper instruments of conveyance, all lands hereby granted, or intended to be granted and conveyed * * * [whenever those officers shall be so requested], and, thereafter, the said president * * * shall cause the said conveyances to be properly recorded * * *, and, when said conveyances are so recorded, the title to the said lands, with the possession thereof, shall, thenceforth, vest, absolutely, in the said board,” etc.
Now, it appears to us that, if the intention had been to distinguish between tax and swamp lands, in the matter of the requirement with respect to the execution of instruments of conveyance and their registry, the lawmakers would have so expressed it. But why, if they intended the grant of the swamp lands to become effective at once, do they make it the duty of the Auditor and Register, only “after the expiration of six months, to convey * * * all lands hereby granted, or intended to be granted, or conveyed,” and why do they say, with regard to all such lands, “when such conveyances are so recorded, the title to the said lands, with the possession thereof, shall, thenceforth, vest, absolutely, in the said board”? We are bound to assume that the makers of the law knew the difference between “all lands, granted, or intended to be granted,” by them, and any given class or parts of such lands, and we cannot assume that, intending the grant with respect to some of the lands to take éfifect in praesenti, they would practically have'pro *217 hibited the Auditor and Register from executing conveyances to any of the lands until after the expiration of six months, and would have said that “thenceforth” (that is to say, after the execution and registry of such conveyances) “the title to the said lands, with the possession thereof,” shall “vest” in the grantee. If it had been the intention that the title to all, or to any part, of the lands should be vested in the board merely by virtue of the statute, one would suppose that it would have been made the duty of the Auditor and Register to execute conveyances as soon as the statute was adopted, at least, for so much of the land as was intended to be granted in that way; but the statute, by imposing upon those officers the duty of executing such conveyances “after six months,” impliedly prohibited them from doing so within that time. Upon the whole, we are of opinion that the law in question is susceptible of but one interpretation, i. e., that its makers intended that disposable title to all lands granted or intended to be granted by it should vest in the grantee only upon registry, in the parishes where the .lands lie, of proper instruments of conveyance executed by the Auditor and Register of the State Land Office. So far as the tax lands are concerned, the reason for thus qualifying the grant is obvious enough. The state held large bodies of land forfeited or bought in for taxes, some of which was subject to redemption and some not, and endless confusion might have arisen if the levee board had been placed in a position to sell such lands indiscriminately.
As to the swamp lands, it may well be that in many instances there were pending unsettled claims and controversies of which the land office was advised, with which the Register alone was qualified to deal, and which rendered it inadvisable that new titles should issue save to the knowledge of that officer. But whether these views, as to the reasons which inspired the law,.be correct or not, the law itself is' plain, and it has (in effect) twice received from this court the interpretation which we are now placing on it; once in a case involving lands formerly constituting the bed of a shallow lake, and again in a case involving lands acquired by the state under its tax laws. McDade v. Levee Board, 109 La. 625, 33 South. 628; St. Paul v. Louisiana Cypress Lumber Co., 116 La. 585, 40 South. 906. In the case of Williams v. White Castle Lumber Company, 114 La. 450, 38 South. 414, the question here presented was not directly at issue, but was referred to without disapprovai of the views previously expressed in the McDade Case.
In conclusion, we may say that no one pretends that the Congress of the United States or the General Assembly of Louisiana may not enact statutes granting lands in prsesenti, and no one denies that Congress has enacted statutes which, no doubt properly, have been construed as so intended; but we have been referred to none, so construed, which have contained provisions such as those how under consideration, and a review of the jurisprudence interpreting statutes containing dissimilar provisions would serve no useful purpose.
■ It is admitted that defendant has paid $751.09 of taxes on the lands here claimed, for which, we think, it is entitled to judgment, with a right to retain the property until payment thereof.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, the state of Louisiana, and against the defendant, the Cross Lake Hunting & Fishing Club, decreeing plaintiff to be the sole owner of the lands described in the petition herein filed, and further decreeing the title set up by defendant, including the attempted sale from the board of commissioners of the' Caddo *219 levee district to W. B. Jacobs, A. F. Jenkins, W. S. Penick, Jr., and S. J. Enders, of date August 20, 1895, and all mesne conveyances, to be null, void, and of no effect.
It is further adjudged and decreed that defendant recover the sum of $751.09, with interest thereon, at the rate of 5 per cent, per annum from judicial demand until paid, and that it be allowed to retain the property in ■controversy in its possession until payment thereof.
It is further decreed that defendant pay all ■costs.
LAND, J.,
recused, having, while district judge, passed on defendant’s title in another, litigation.
See dissenting opinion of PROVOSTY, J., 48 South. 894.