*843
 
 HIGGINS, Justice.
 

 The Board of Commissioners of the Caddo Levee District appealed from the judgment of the trial court holding that by warranty title the transferees of the District and their successors and assigns were owners of the mineral rights of the lands known as the “R. E. Allison-Ellerbe Farm,” and therefore, entitled to share according to their proportionate interests, in the approximate sum of $220,000, representing the purchase price of the oil obtained therefrom and sold to the Standard Oil Company, which corporation deposited the funds in the registry of the court in a coiicursus proceeding under Act 123 of 1922, and cited all claimants to assert their rights thereto.
 

 The State of Louisiana was cited, through the Register of State Lands, and it excepted to the jurisdiction of the court. This exception was sustained with the consent of all parties, after the Attorney General entered into a stipulation to the effect that the State was not claiming any title and if it had answered the petition, its answer would have been identical with that filed by the State Mineral Board. This board, in its answer, disclaimed any right to the proceeds deposited in the court and averred that the Board of Commissioners of the Caddo Levee District had title to all of the mineral rights in the lands and, therefore, it was entitled to the funds on deposit in the registry of the court.
 

 The Board of Commissioners of the Caddo Levee District, in its answer, averred that it was a public corporation of this State created by Act 74 of 1892, as amended by Act 160 of 1900; that the lands in controversy were subject to the terms of those acts and were thereby granted to the District; that on September 19, 1895, by an authentic deed with warranty of the fee-simple title, the District sold the property involved in this suit, together with other lands, to Levi Cooper and Albert H. Leonard; that the act was properly registered in the Conveyance Office of Caddo Parish; that on October 31, 1919, and October 8, 1923, formal certificates of conveyance were issued by the Register of State Lands and the State Auditor, covering only a part of the lands included in the sale, and these certificates were properly registered in Caddo Parish; that instruments of conveyance were not issued on the lands in controversy until 1924, 1926 and 1927; that these lands became the subject of two suits which were brought by Mrs. Cecilia Ellerbe (sole heir of Albert H. Leonard), Mrs. Tljeo Cooper Greil (sole heir of Mrs. Levi Cooper) and Levi Cooper, against the Auditor and the Register of State, in which they claimed the ownership of the lands bought from the Caddo Levee District, and prayed for an injunction against the state officials, “prohibiting them from executing mineral leases affecting said lands or from receiving applications for the sale or lease thereof, and requiring them to recognize, respect, and give full effect to the ownership of said plaintiffs;” that while these two suits were pending, the Board of Commissioners of the Caddo Levee District, “after careful and prolonged discussions,” by resolutions dated March
 
 *845
 
 26, 1926, instructed the Board’s attorney to file a petition of intervention in the suits, and to join the plaintiffs in asking that relief he accorded to them as prayed for; that on June 2, 1926, another resolution was passed by the Board, instructing its attorney to intervene in the suits in its behalf'in order to make unquestioned the complete ownership of Ellerbe and Cooper to the lands involved and to have these lands certified to them; that on November
 
 27,
 
 1926, the attorney was authorized to appear in these suits “for the purpose of protecting titles made by the former Board to the plaintiffs in this suit,” or any other litigation where the validity of titles warranted by the Board was in contest; that from an adverse judgment of the district court, the Attorney General perfected an appeal to the Supreme Court (where counsel for the Caddo Levee District filed a brief), and the judgment of the lower court was affirmed, restraining the state officials from leasing or selling the lands claimed to be owned by the plaintiffs, Ellerbe et al. v. Grace et al., 162 La. 846, 111 So. 185; that thereafter, formal certificates were issued on the property to the Caddo Levee District by the State Register and the State Auditor; that “Since the sale of the lands in question by the defendant Board of Commissioners to Cooper and Levi on September 19, 1895, as set forth in paragraph 9 hereof, the said Board has never taken a position or made any claims respecting said land inconsistent with its position as vendor thereof by the deed referred to in paragraph 9 and attached hereto;” and that the Board prayed “for such judgment as may, in the opinion of the court, be justified by the law and the facts herein set forth.”
 

 The successors in title of the transferees and their assigns, in addition to the facts stated in the District’s answer, averred that they were the owners of a perfect fee-simple title to the property by virtue of the authentic act of sale, with warranty, by the Board to their ancestors in title in September, 1895; that after the sale, the transferees, their successors, and assigns had taken actual possession of the lands and had cultivated them for agricultural purposes, the assessment of the property being in their names on the tax rolls of Caddo Parish and all taxes due to the State and its subdivisions had been paid by them; that they had title to the property prior to 1921; that by virtue of the warranty of the Levee District any subsequently-acquired title to the lands enured to the benefit of its purchasers or transferees under the act of sale of 1895; that their title was perfected by Act 62 of 1912 prior to the adoption of the Constitution of 1921; that the question of ownership of or title to the lands between the State and the transferees, their successors and assigns, was res ad judicata, the matter having been finally determined in their favor/ and against the State in the case of Ellerbe et al. v. Grace et al., 162 La. 846, 111 So. 185; that the State and the Board of Commissioners of the Caddo Levee District were barred by estoppel both judicial and en pais from asserting claim of title to the lands or the minerals, or any part thereof, against them; and that on May 23, 1938, these respondents executed an oil, gas and mineral lease on
 
 *847
 
 the aforesaid property to R. E. Allison, a co-defendant herein, who has gone on the property and through great expense drilled a number of wells and produced a large quantity of oil, which has been sold to the Standard Oil Company, and that the purchase price thereof has been placed in the registry of the court. The respondents prayed to be recognized as the owners of the mineral rights in the lands, in their respective proportions, and, as such, entitled to all of the proceeds realized from the sale of the oil.
 

 On the trial of the case on its merits, the facts set forth in the pleadings were substantially proved and, in addition thereto, it was shown that the Board of Commissioners of the Caddo Levee District, by resolution, and the transferees, through their attorney, in writing, made demands in 1919 and 1920 upon the Register of State Lands and the State Auditor to issue proper certificates of conveyance to them covering the lands in question, but they were refused on the ground that the lands were not subject to the grant and that the United States Government was claiming them.
 

 The trial judge held that as the District conveyed to the purchasers, by authentic warranty sale, a fee-simple title to the property in September, 1895, and as they took physical possession of the lands and paid the taxes thereon for forty-four years and had, directly and indirectly, through the Levee District itself, demanded of the State Auditor and the Register, instruments of proper conveyance of the lands in 1919 and 1920, that the provisions of Section 2, Article 4 of the Constitution of 1921, requiring the reservation of mineral rights on all lands sold by the State were not applicable here. He did not pass on the pleas of res adjudicata and estoppel. From this judgment the District appealed.
 

 The Caddo Levee District was created by Act 74 of 1892, as amended by Act 160 of 1900, the pertinent provisions of which act, as amended read, as follows:
 

 “That in order to provide additional means to carry out the purpose of this act and to furnish resources to enable the said Board to assist in developing, establishing and completing the levee system in the said District, all lands now belonging or that may hereafter belong to the State of Louisiana, and embraced within the limits of the levee district as herein constituted, shall be and the same are hereby granted, given, bargained, donated, conveyed, and delivered unto the said Board of Commissioners of the Caddo Levee District, * * *. After the expiration of the said six months it shall be the duty of the Auditor and Register of the State Land Office on behalf of and in the name of the State to convey to the said Board of Levee Commissioners by proper instruments of conveyance, all lands hereby granted or intended to be granted and conveyed to the said Board whenever from time to time the said auditor or register of the State land office or either of them shall be requested to do so by the said Board of Levee Commissioners or by the President thereof, and thereafter the said President of the said Board shall cause the said conveyances to be properly recorded in the Recorder’s office of the respective parishes wherein the said lands are located
 
 *849
 
 and when the said conveyances are so recorded the title to the said lands with the possession thereof shall from thenceforth vest absolutely in the said Board of Commissioners, its successors, or grantees. The said lands shall be exempted from taxes after being conveyed to, and while they remain in the possession or under the control of the said Board. The said Board of Levee Commissioners shall have the power and authority to sell, mortgage and pledge or otherwise dispose of the said lands in such quantities, and at such times, and such prices as * * * the Board may deem proper. * * * ”
 

 The jurisprudence of our State is well settled that the grants of lands by the State to the various Levee Boards were not grants in praesenti and that title and possession thereof remain in the State and under the control of the Legislature, which has authority to withdraw such grants until the conditions required by the statute to transfer ownership to the Levee Boards have been met. McDade et al. v. Bossier Levee Board, 109 La. 625, 33 So. 628; Hartigan v. Weaver, 126 La. 492, 52 So. 674; Atchafalaya Land Company, Limited, v. Dibert, Stark & Brown Cypress Company, Ltd., et al., 157 La. 689, 102 So. 871; State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891; Atchafalaya Basin Levee Board v. Capdervielle, Auditor, 142 La. 111, 76 So. 327; Atchafalaya Land Company v. F. B. Williams Cypress Company et al., 146 La. 1047, 84 So. 351; State v. Board of Commissioners of Caddo Levee District, 188 La. 1, 175 So. 678; State ex rel. Fitzpatrick v. Grace, 187 La. 1028, 175 So. 656; Ballard Island Oil & Gas Company v. Douglas, 172 La. 385, 134 So. 257.
 

 It has also been held that where there has been no formal instruments of conveyance issued by the State Register and the Auditor, the purchasers of lands from the Levee Districts have an interest or property right in the lands such as the District itself had and, therefore, as assigns of the District, they may resort to the court for the purpose of protecting their interest or rights in the property against others. Ballard Island Oil & Gas Co. v. Douglas, 172 La. 385, 134 So. 257; Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173; State ex rel. Levee Board v. Capdervielle, 142 La. 111, 76 So. 327; and Ellerbe et al. v. Grace, 162 La. 846, 111 So. 185.
 

 In the case of State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace et al., 161 La. 1039, 109 So. 830, this court held that the provisions of Section 2- of Article 4 of the Constitution of 1921, requiring reservation of mineral rights on any lands sold by the State, did not give the State Auditor and the Register the right to issue the formal instruments of conveyance to the Levee District with reservation of all of the mineral rights in the State because the provisions of the Constitution did not apply to sales where the State was transferring the property to one of its agents, which, in turn, when it sold the property, would be compelled to retain the mineral rights therein, and therefore, the constitutional provision did not even partially repeal the legislative act, 103 of 1892, under which the grants to the Levee District were
 
 *851
 
 made. Likewise, it must be said that the same constitutional provision did not repeal Act 74 of 1892, as amended by Act 160 of 1900, which created the Caddo Levee District and made grants of certain State lands to it. The District under the above holding was entitled to have the formal acts or instruments of conveyance by the State Auditor and the Register made to it without any reservation of the mineral rights. These instruments were properly issued to it and recorded in Caddo Parish subsequent to 1921.
 

 Counsel for the Levee District contend that as the District did not have a disposable title on September 19, 1895, when the property was sold to the transferees, that the purported act of sale conveyed no rights whatsoever, had no legal efficacy, and was in contemplation of law a mere scrap of paper and, therefore, when the instruments of conveyance' from the State Auditor and the Register of State Lands were obtained in 1924, 1926 and 1927 covering these lands, the pertinent constitutional provision was operative and effective in prohibiting the Levee District from conveying the mineral rights to its former transferees, and thus the question of retroactive effect of the constitutional provision does not arise, citing State v. Cross Lake Shooting & Fishing Club, 123 La. 208,
 
 40
 
 So. 891.
 

 It will be noted, in the instant case, that neither the Levee District nor the State claimed the fee title to the lands in question nor do we think such a claim could have been successfully urged. State ex rel. Board of Commissioners of Tensas Basin Levee District v. Grace et al., 161 La. 1039, 109 So. 830; Barnett v. State Mineral Board, 193 La. 1055, 192 So. 701, 703. The District’s claim to the mineral rights in the- land is based solely upon Section 2, Article 4, of the Constitution of 1921, which reads in part as follows : .“In all cases the mineral rights on any and all property sold by the State shall be reserved.”
 

 In the case of Barnett v. State Mineral Board, supra, in dealing with the above section of the article of the Constitution of 1921, this court said: “It is clear that the article do.es not affect any grants or transfers of lands made prior to the adoption of the Constitution.” It was further held that as the execution of the instruments of conveyance by the State Auditor and the Register was the performance of a mere ministerial duty “neither of them is clothed with discretion to refuse to sign the deeds of transfer.”
 

 In the case of Ellerbe et al. v. Grace, Register of State Land Office et al., 162 La. 846, 849, 111 So. 185, 186, it is stated:
 

 “In Atchafalaya Land Co. v. Dibert, Stark & Brown Cypress Co., 157 La. 689, 102 So. 871, it was held that the grant by the state, to the various levee boards, of certain lands within their limits, was not a grant of the lands in prsesenti, but a grant of the -right to acquire'the lands by a conveyance from the proper state officers. It was there held, however, that—
 

 “ ‘The various levee boards, all organized under similar statutes (Act No. 97 of 1890; Act No. 74 of 1892, etc.), and their assigns, acquired such an interest in the lands mentioned in the statutes that (1) the levee
 
 *853
 
 boards may at any. time demand a conveyance thereof from the proper authorities (State ex rel. Levee Board v. Capdervielle, 142 La. 111, 76 So. 327); (2) the assignee of the levee board may enjoin the register of the land office from selling such lands under the general land laws of the state (Atchafalaya Land Co. v. Grace, 143 La. 637, 79 So. 173); and (3) such assignee may even cause to have canceled a patent actually issued to a third person for such lands (State ex rel. Levee Board v. Grace, 145 La. 962, 83 So. 206).’ [(See, also, Ballard Island Oil & Gas Co. v. Douglas, 172 La. 385, 134 So. 257.) (Parenthesis ours.)]
 

 “The reason is that by such grants to the different levee boards, the state intended to and thereby did, withdraw such lands thenceforth from the operation of the general land laws.
 

 * * * * * *
 

 “And it is clear that, if the lands- in controversy are covered by the grant made to the Caddo levee board by Act No. 74 of 1892, or by Act No. 160 of 1900 amendatory thereof, then plaintiffs are entitled to the relief sought.
 

 ‡
 
 %
 
 ‡ sfc
 

 “But he that as it may as to the other levee boards of the state, Act No. 160 of 1900, above mentioned, has placed the status of former state lands in the Caddo levee district beyond the domain of further controversy, whether that act be considered as a legislative interpretation of the grant intended by the act of 1892 or as an additional grant. If the former, then this authoritative declaration of the state’s intention is binding upon the state’s officers. Cf. State v. New Orleans City & L. R. Co., 104 La. 685, 29 So. 312. And if the latter, then this new grant inured at once to the benefit of those who hold from the levee board; and the state and all state agencies are therefore forever estopped thereby from ever thereafter asserting title to the lands in the face of the obligation of warranty resulting from such grant. * * * ”
 

 An important fact in this case is that the Board of Commissioners of the CaddoLevee District and the transferees, during the years of 1919 and 1920, demanded, in writing, on several occasions, from the Register of State Lands and the State Auditor the instruments of conveyance covering these lands and these officials declined to issue them. The transferees, under the sale of 1895, at their own expense, in co-operation with the State, litigated with the United States government, through the Department of Interior, the question of whether or not the State had title to the property under the swamp land grants. 47 Land Dec. 366; 48 Land Dec. 201 and 51 Land Dec. 291 of the Federal Department of Interior. The transferees after adverse rulings by the Department of Interior brought suit in the Supreme Court of the District of Columbia, where they were again unsuccessful. They appealed to the Supreme Cburt of the United States, where they obtained a judgment, reported under the title, Work, Secretary of the Interior, v. Louisiana, 269 U.S. 250, 46 S.Ct. 92, 70 L.Ed. 259, in which it was held that the swamp land grants of 1849 to the States did not exclude mineral lands and that the State of Louisiana had a right to claim ownership of the lands in question.
 

 
 *855
 
 It was the persistent and continued wrongful refusal of the State Auditor and the Register of State Lands prior to 1921 to perform their ministerial duties in executing the instruments of conveyance that deprived the Levee District and its transferees of the certificates, which they were entitled to receive, and which compelled the successors of the transferees of the sale in 1895 to institute the suit entitled “Ellerbe v. Grace,” supra, in order to enjoin the Register of State Lands from selling or leasing the lands to some one else.
 

 The Board of Commissioners of the Cad-do Levee District, by resolutions, recognized the title of its transferees in the sale of 1895 and authorized its attorneys to intervene and appear in the foregoing suit for the purpose of making certain the plaintiff’s title to the lands and to put it beyond further dispute. It was only after a final judgment in the case that the instruments of conveyance were obtained and properly registered in Caddo Parish where the lands are located.
 

 The argument that the transferees, their successors and assigns were guilty of laches in failing to have the instruments of conveyance promptly issued is without foundation, because it appears that when they learned of the defects in their title, they diligently and at considerable cost took the leadership in endeavoring to correct the deficiencies and eliminate the adverse claims.
 

 In view of the foregoing facts and the decisions of this court, it is incorrect to say that the warranty title by the Levee District to the transferees in 1895 conveyed no rights or interest in the lands at that time to the purchasers and at least up to the year 1921. Under the act creating the District, it had full power and authority to contract and bind itself as a corporation and body politic and also to sell lands which it might own. Section 4, Act 74 of 1892. Surely, we cannot treat the claims of the transferees, their successors and assigns in this case to the ownership of the mineral rights in the lands in question, as if the lands were sold by the Levee District to them after 1921. To arrive at that conclusion, we would have to completely ignore the above-cited authorities and all of the facts and circumstances which transpired prior to 1921 and especially the fact that demands were made for certificates of conveyance during 1919 and 1920. Under the decisions of this court, above cited, the Levee District and the purchasers of the lands were entitled at that time to have these documents executed and registered. It was not their fault that this was not done. The purchasers could not be deprived of their rights by the wrongful refusal of the Auditor and the Register to complete their titles.
 

 If the transferee of a Levee District, which had not obtained the proper instruments of conveyance from the State Auditor and the Register of State Lands, is permitted to stand upon rights thus acquired in order to litigate with others in court for the protection of that interest and those rights, it is difficult to understand how the contract of sale or act of sale with warranty by the District to the transferee can be said to be a mere scrap of paper and of ab
 
 *857
 
 solutely no legal effect, when demands for the certificates of conveyance were made prior to 1921.
 

 It appears to us that, as the Board of Commissioners of the Caddo Levee District and the purchasers therefrom made demands prior to 1921 upon the State Auditor and the State Register for proper certificates of conveyance of the lands in controversy and having been deprived thereof by the wrongful refusal of those officials, the rights of the Levee District and its transferees, their successors and assigns became fixed as of that time.
 

 Article 2040 of the Civil Code provides:
 

 “The condition is considered as fulfilled, when the fulfillment of it has been prevented by the party bound to perform it.” Southport Mill v. Friedrichs, 171 La. 786, 132 So. 346; D’Avricourt v. Seeger, 169 La. 620, 125 So. 735; Morrison v. Mioton, 163 La. 1065, 113 So. 456.
 

 Thus, we see that prior to the Constitution of 1921, the Levee Board, at the instance of its vendees, had done and performed every act which under the law of its creation it could do to make technically perfect its vendees’ title. The only condition not fulfilled was the issuance of the certificates by the two State officials who refused and failed to perform their ministerial duty. Under the above Article of the Code, in legal contemplation the rights of the parties were crystallized at that time for the law will view the situation as if the condition, i. e., issuance of certificates, had been fulfilled. This is not a case where the parties of their own volition or through indifference waited until after the Constitution of 1921 was adopted and demanded final clerical and ministerial performance by the proper officials. We, therefore, agree with our brother below that the Constitutional provision invoked by the District is not applicable here. It is also our opinion that under the facts of this case, the plea of estoppel against the Board of Commissioners of the Caddo Levee District is good and, therefore, sustained. State ex rel. Shell Oil Company v. Register, 193 La. 883, 884, 890, 192 So. 519; Brock, State Bank Commissioner, v. Town of Kentwood, La.Sup., 199 So. 133,
 
 [1]
 
 decided December 2, 1940; and State v. Broussard, 166 La. 133, 116 So. 827.
 

 The law is well settled that where one in proper form, with warranty, conveys title of real estate to another and it subsequently develops that there are some defects therein or that the seller did not have title to the property but later the imperfections are corrected in favor of the vendor or title thereto is acquired by the seller, that the subsequently-acquired rights or title enure to the benefit of the former vendee. Gailey et al. v. McFarlain, 194 La. 150, 193 So. 570, and Barnett v. State Mineral Board, supra.
 

 Counsel for the Levee District have cited the case of State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891, as decisive of the question presented in favor of their client. The case is distinguishable on two grounds: (1) Neither the Levee District nor its' vendee ever made any de
 
 *859
 
 mand on the State Auditor and the Register for certificates of conveyance of the lands sold as was done, in the instant case; and (2) Neither were there any instruments of conveyance issued by the State Auditor and the Register to the Levee District as was done in the instant case, even though they were delayed by the unwarranted refusal of the officials. The court, therefore, held that the grant of the lands to the Levee District by Act 74 of 1892 was not a grant in praesenti and as the Board had no disposable title, it could’convey none to the grantee in the absence of proper certificates of conveyance from the Auditor and the Register of State Lands and consequently the State, through the Legislature, still had control of the titles fo the lands as there was no outstanding vested interest and it was free to repeal the grant as it did by Act 171 of 1902.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.
 

 [1]
 

 196 La. 318.