# BANNING COMPANY v. PEOPLE OF THE STATE OF CALIFORNIA UPON THE INFORMATION OF WEBB, ATTORNEY GENERAL.

## ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 73.   Argued January 19, 1916.—Decided February 21, 1916.

The withdrawal from sale of lands by a State before any right is consummated, does not amount to the impairment of the obligation of a contract within the meaning of Article I, § 10 of the Federal Constitution.

While an offer made by a State, though no particular person be designated, and accepted, may constitute a contract protected by the Federal Constitution, the offer and acceptance must have the characteristics of a bargain and be conventional counterparts.

Where a State makes a general offer to sell and provides for contest and determination of conflicting claims of parties contending for the right to purchase, the State is not bound by its offer or precluded from withdrawing it, until the rightful claimant is determined and his right of purchase perfected by payment of at least an installment of the price thereof.

Expenditures, other than payment to the State, by one intending to accept a general offer of a State to sell public lands are but voluntary

qualifications to become a purchaser and are not binding on him to proceed to purchase or on the State to wait for him to purchase.

Although the statute of California of 1863 gave private parties the right to acquire tide lands under certain conditions, the right was abrogated by later statutes and the constitution of 1879, and such abrogation was not unconstitutional under the contract clause of the Constitution as to one who had not paid any part of the purchase price prior thereto.

169 California, 542, affirmed.

THE facts, which involve the constitutionality under the contract clause of the Federal Constitution of legislation of California and provisions of the constitution of 1879 withdrawing state lands from sale, are stated in the opinion.

*Mr. James A. Gibson,* with whom *Mr. Edward E. Bacon* was on the brief, for plaintiffs in error:

The proceedings for purchase taken by Phineas Banning in 1866, under the act of 1863, created a contract with the State of California for the purchase of the land in accordance with that act, which could not be impaired by any subsequent legislative action.

The State's offer to sell was accepted by filing application to purchase and this consummated a binding contract.

The decisions relied on under preëmption laws can be distinguished, and do not involve doctrine of contract by offer and acceptance.

Sufficient consideration for State's contract is found in expenditures on the faith of the offer, and implied promise by the applicant to pay the purchase price.

Prior decisions of the California court are not binding on this court, nor even persuasive as authority.

The contract by offer and acceptance has been sustained by numerous decisions under the contract clause of the Federal Constitution.

The judgment rendered by the District Court in the

contest proceedings in 1879 conclusively established the
contract right of Phineas Banning to purchase the land
in suit and that right constituted property of which he
could not be deprived by subsequent legislation without
violating both the contract clause and the due process
clause of the Federal Constitution.

None of the legislation intermediate the act of 1863
and the constitution of 1879 should be construed as
affecting the rights of an applicant under the former act
to complete his proceedings for purchase in accordance
therewith.

In support of these contentions, see *Am. Exp. Co.* v.
*Mullins*, 212 U. S. 311; *Blair* v. *Chicago*, 201 U. S. 400;
*Water Co.* v. *Boise City*, 230 U. S. 84; *Campbell* v. *Wade*,
132 U. S. 34; *Frisbie* v. *Whitney*, 9 Wall. 187; *Grand Trunk
Ry.* v. *South Bend*, 227 U. S. 544; *Hall* v. *Wisconsin*, 103
U. S. 5; *Hendrick* v. *Lindsay*, 93 U. S. 143; *Louisiana R. R.*
v. *Behrman*, 235 U. S. 164; *Louisville* v. *Cumberland Tel.
Co.*, 224 U. S. 649; *McCullough* v. *Virginia*, 172 U. S. 102;
*New York Elec. Co.* v. *E pire City Co.*, 235 U. S. 179;
*New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650;
*New Orleans Water Co.* v. *Rivers*, 115 U. S. 674; *Nor. Pac.
R. R.* v. *DeLacey*, 174 U. S. 622; *Owensboro* v. *Cumberland
Tel. Co.*, 230 U. S. 58; *Pennoyer* v. *McConnaughy*, 140
U. S. 1; *Russell* v. *Sebastian*, 233 U. S. 195; *Tarpey* v.
*Madsen*, 178 U. S. 215; *Telfener* v. *Russ*, 145 U. S. 522;
*United States* v. *Klein*, 13 Wall. 128; *U. S. Fidelity Co.* v.
*United States*, 209 U. S. 306; *Walla Walla* v. *Water Co.*,
172 U. S. 1; *Yosemite Valley Case*, 15 Wall. 77; *McCon-
naughy* v. *Pennoyer*, 43 Fed. Rep. 196; *Anthony* v. *Jillson*,
83 California, 296; *Buckley* v. *Howe*, 86 California, 596;
*Cadierque* v. *Duran*, 49 California, 356; *Christman* v.
*Brainerd*, 51 California, 534; *Cunningham* v. *Shanklin*,
60 California, 118; *Cushing* v. *Keslar*, 68 California, 473;
*Dillon* v. *Saloude*, 68 California, 267; *Garfield* v. *Wilson*,
74 California, 175; *Goldberg* v. *Thompson*, 96 California,

117; *Hinckley* v. *Fowler*, 43 California, 56; *Lobree* v. *Mullan*, 70 California, 150; *McFaul* v. *Pfankuch*, 98 California, 400; *Perri* v. *Beaumont*, 91 California, 30; *Tyler* v. *Houghton*, 25 California, 27; *Wright* v. *Langenour*, 55 California, 280; *Youle* v. *Thomas*, 146 California, 537.

*Mr. Albert Lee Stephens* and *Mr. J. A. Anderson*, with whom *Mr. U. S. Webb*, Attorney General of the State of California, and *Mr. W. H. Anderson* were on the brief, for defendant in error.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Suit brought by the State of California to quiet title to certain lands embraced in a patent issued under certain statutes of the State authorizing the sale of tide lands.

The lands involved constituted location No. 57 of the state tide lands, and the State alleged that they had been at all times a portion of the inner bay of San Pedro and below the line of ordinary high tide; that they were partly within the limits of the City of San Pedro and partly within the limits of Wilmington; that prior to and since 1870 no portion of them had ever been reclaimable for agricultural or other purposes and that the State had at all times withheld them from sale.

The intermediate pleadings we may omit. The defendants (plaintiffs in error here) filed separate answers, the pertinent parts of which may be summarized as follows: They denied the title of the State, the location of the lands as alleged or their relation to the cities of San Pedro and Wilmington, or that they were not susceptible of reclamation for agricultural purposes or that they had been withheld from sale by the State.

For an affirmative defense it was alleged that one Phineas Banning, in February, 1866, made application to the

State under an act of its legislature for the disposition of state lands to purchase the lands in controversy; that he possessed the qualifications to apply to purchase the lands and on February 15, 1866, did apply to purchase them under an act of the legislature providing for their sale approved April 27, 1863, and in conformity to his application and the provisions of § 7 of that act caused a survey of the lands to be made and a plat and field notes thereof to be completed by the county surveyor of Los Angeles County and paid a large sum of money to such surveyor April 2, 1866, for legal fees; that he caused a copy of his application and affidavit to be filed in the office of the surveyor general of the State February 15, 1866; that on said date he subscribed the oath required by § 28 of the act of 1863 and complied with § 29; that by reason of such proceedings he acquired the title to the lands and a contract was created between him and the State whereby the State agreed to sell him the lands upon the terms provided in the act of 1863. That he complied with all other provisions of the act and of other acts, and that a patent was duly issued to him and the title thereby conveyed to him and by him conveyed to defendants. That the State by this action is attempting to impair the obligation of the contract between the State and Banning in violation of Article I, § 10, of the Constitution of the United States.

That subsequently other applications were made to purchase other lands in the vicinity of location No. 57 which overlapped and conflicted with that made by Banning; that one of said applicants, to-wit, one William McFadden, made a demand upon the surveyor general of the State that in pursuance of § 3413 of the Political Code of the State the contest between the applicants be referred to the proper court for judicial determination of the question as to which of the applicants was entitled to a patent from the State. That in accordance with

the requests the surveyor general referred the contest to the District Court of the Seventeenth Judicial District of the State in and for the County of Los Angeles and in pursuance thereof McFadden commenced an action against Banning and certain other parties and it was therein adjudged that Banning was entitled to purchase and to have a patent issued to him and that Banning was entitled to the approval of his survey and application as to all of the lands described in his amendatory application of January 2, 1878, except a certain described tract, and was entitled to comply with the further provisions of the law to purchase and receive a patent therefor.

That Banning, on April 5, 1880, paid the first installment on the purchase price of the land, and, on April 10, 1880, a certificate of purchase was issued to him whereby it was certified that he had in all respects complied with the law and was entitled to receive a patent; that subsequently, on December 14, 1881, another certificate was issued certifying that full payment had been made to the State and that the decree of the court in the contest proceedings had been fully complied with and that he was entitled to a patent, and thereafter on December 16, 1881, a patent was duly issued in accordance with the certificate and the decree of the District Court and duly recorded in the office of the recorder of Los Angeles County.

That the defendants have succeeded to the rights of Banning and have become vested with a fee simple title to the lands paramount to the claim of the State or of any person; that the State is estopped by the judgment of the District Court and the proceedings from claiming any right, title or interest in them or any of them and that the patent and proceedings are a bar to the claim of the State or of any one.

As a third defense §§ 312, 315, 316, 317, 318 and 319

of the Code of Procedure of the State were pleaded as a bar to the action.

The trial court found to be true the allegations of the State as to the character of the lands, their location within the inner harbor of San Pedro, and that, since 1870, they have been within two miles of the city of San Pedro and Wilmington, being partly within the limits of those cities.

The court also found the fact of the application of Banning as alleged, the conflict with McFadden, its reference to the District Court for decision, the decision and judgment rendered and the subsequent proceedings had, the payment of the purchase price of the lands and the issue of patent to Banning. It further found that the patent was void, that no title vested thereby to any land below ordinary high tide, that the State was not estopped by the judgment or the subsequent proceedings and that they did not bar the claims of the State, nor constitute an adjudication of the matters in controversy against the State or debar it from prosecuting this action. The court also decided against the bar of the sections of the Code of Procedure.

From these findings the court concluded and decreed that the State was the owner of the lands and that the defendants had not nor had either of them any estate or title in them. A motion for new trial was made and denied and on appeal the Supreme Court affirmed the judgment and order denying the new trial.

There is no dispute about the facts. Banning complied with the act of 1863 and subsequent acts concerning the sale of the lands and acquired title if they had the efficacy to convey it or were not suspended in their operation by subsequent legislation and by the constitution of the State adopted in 1879.[1] The Supreme Court denied in

[1] "No individual, partnership, or corporation, claiming or possessing the frontage or tidal lands of a harbor, bay, inlet, estuary, or other navigable water in this State, shall be permitted to exclude the right

some respects such efficacy and decided that all of the right of Banning to acquire title to the lands was taken away by the constitution of 1879, and the legislation to which we shall presently refer.

We need not encumber the opinion with a detail of the statutes. It is conceded and the Supreme Court has decided that title could be acquired to the tide lands of the State under the act of 1863, and it is conceded that Banning proceeded regularly under that statute and acquired the title if other statutes or the constitution of 1879 did not intervene to prevent. It is upon the efficacy of the later statutes and the constitution that the questions in the case depend.

The specific contention of plaintiffs in error is that by the application to purchase the lands under the act of 1863, the expenditure of money in accordance with its provisions for a survey of the lands, the statute of 1868 and the Political Code, and the judgment in the Mc-Fadden contest, a contract between Banning and the State was made which the constitution of 1879 or subsequent statutes could not impair.

The opposing contention is that no inviolable right of purchase vested in Banning or contract occurred until the payment by him of the purchase price of the lands and that such payment was after the adoption of the constitution and legislation withdrawing the lands from sale. In other words, that the lands were withdrawn from sale before any right became consummated.

---

of way to such water whenever it is required for any public purpose, nor to destroy or obstruct the free navigation of such water; and the legislature shall enact such laws as will give the most liberal construction to this provision, so that access to the navigable waters of this State shall be always attainable for the people thereof." Article XV, § 2, p. 37.

The constitution of the State has special relevancy in regard to contentions not before us. We refer to and insert it only for the sake of completeness, it being referred to throughout the argument.

Some dates are necessary to be given: Banning's application was made in February, 1866. It was allowed to repose without attention until the contest initiated by McFadden in April, 1878, on account of McFadden's application that overlapped and conflicted with Banning's. Judgment was entered in this contest November 26, 1879. This judgment decided Banning's to be the prior right. He made a first payment on the lands March 5, 1880. The certificate was issued April 10, 1880, and a patent executed December 16, 1881. The constitution was adopted in 1879, as we have seen. And further, in 1872, the town of Wilmington was incorporated, and the Supreme Court held that by an act passed April 4, 1870, all lands within two miles of "'any town or village'" (Statutes of 1869–70, § 877) were excluded from sale. This provision was repeated in the Political Code of 1872, § 3488, p. 532. The act of incorporation of Wilmington was repealed in 1887 (Stats. 1887, 108, 109) but the court said, "If in point of law Wilmington was an incorporated town during the interval between the passage and repeal of the law, then all proceedings to purchase the lands in question taken in that interval would be invalid with respect to land within the two-mile limit." This being the law, and the lands lying within two miles of the limits of Wilmington as incorporated by the act of 1872, the court said, "the patent is void and all claims of any of the defendants thereunder are invalid."

We accept this construction of the act incorporating Wilmington and the effect of the act of April 4, 1870, and of § 3488 of the Political Code and the exclusion thereby of tide lands within two miles of Wilmington from sale; and we are brought to the short point of the effect of the application and proceedings under it by the payment of the first installment of the purchase price of the lands and the other acts relied on, whether they consummated

a contract between the State and Banning protected by the Constitution of the United States.

To support such conclusion plaintiffs in error cite *McConnaughy* v. *Pennoyer,* 43 Fed. Rep. 196, in which Judge Deady expressed the view of an Oregon statute which offered the lands of that State for sale that such an application was "a written acceptance of the offer of the State, in relation to the land of the State described therein," and they cite the same case in this court (140 U. S. 1, 18), where that view was pronounced forcible and might have been conclusive but for the opposing consideration that suggested itself that the bare application itself unaccompanied by the payment of any consideration partook of the nature of a preëmption claim under the laws of the United States, with reference to which it had been held that the occupancy and improvement of the land by the settler and the filing of the declaratory statement of such fact conferred no vested right as against the Government of the United States until all of the preliminary steps prescribed by law, including the payment of the price, were complied with. *Yosemite Valley Case,* 15 Wall. 77, and *Frisbie* v. *Whitney,* 9 Wall. 187, were cited. The court found it unnecessary to determine between those views.

The cited cases were approved in *Campbell* v. *Wade,* 132 U. S. 34, 37, 38, and their principle applied to statutes of the State of Texas, one offering land for sale and the other withdrawing it before the performance of the conditions which gave a right of purchase. These conditions were an application to the surveyor of the county in which the land was situated to survey the land and within sixty days after survey to file it in the General Land Office. Within sixty days after such filing, it was provided by the statute, it should be the right of the applicant to pay the purchase money and upon doing so to receive patent for the land. "But for this declaration of the act," this

court said, by Mr. Justice Field (p. 37) "we might doubt whether a right to purchase could be considered as conferred by the mere survey so as to bind the State."

Considering the same statute in *Telfener* v. *Russ*, 145 U. S. 522, 532, it was said that the right was "designated in the decision of the Supreme Court of the State as a vested right that could not be defeated by subsequent legislation."

Plaintiffs in error cite *Nor. Pac. Ry.* v. *DeLacy*, 174 U. S. 622, as in some way modifying the doctrine of the *Yosemite Valley Case* and of *Frisbie* v. *Whitney*. That case involved the question whether a claim of preëmption had under the circumstances stated in the case so far attached to the land in controversy that it did not pass under a grant to the railroad company as land to which the United States had "full title, not reserved, sold, granted or otherwise appropriated, and free from preëmption, or other claims or rights." It was held to have so passed; in other words, that the claim had not attached to the land, DeLacy not having performed the conditions of its preëmption. The case has no value in the solution of the questions presented by the case at bar. Nor have the other cases cited by plaintiffs in error for the proposition that an offer made by a State, though no particular person be designated, and accepted, constitutes a contract which will be protected by the Federal Constitution. The proposition in its generality may be admitted. Its illustration and application in the cited cases it would protract this opinion unnecessarily to detail. It is enough to say that the cases are not apposite. The offer and acceptance must have the characteristics of a bargain, must be conventional counterparts, as in the cited cases, and of which we may say generally franchises were offered on one part and accepted on the other by the undertaking of works costly to construct and costly to maintain and from which the public derived great benefit.

But even in such case it was pointed out in *Wisconsin & Michigan Ry.* v. *Powers,* 191 U. S. 379, 386, that the offer of a State does not necessarily imply a contract. It may be of encouragement merely, "holding out a hope but not amounting to a covenant." The offer of the State was an exemption from taxation, and the asserted acceptance of the offer which was said to consummate a contract was the building of a railroad, and it was observed that the "building and operating of the railroad was a sufficient detriment or change of position to constitute a consideration if the other elements were present. But the other elements are that the promise and the detriment are the conventional inducements each for the other. No matter what the actual motive may have been, by the express or implied terms of the supposed contract, the promise and consideration must purport to be the motive each for the other, in whole or at least in part. It is not enough that the promise induces the detriment or that the detriment induces the promise if the other half is wanting." The "offer" and "acceptance" we held not to constitute a contract. This comment is applicable to the case at bar, and the Supreme Court of the State has decided, as we shall presently see, that the filing of the application does not constitute a binding contract upon the part of the applicant and the State.

But plaintiffs in error say that this court is not bound, against the invocation of the contract clause of the Constitution of the United States, by the decision of the Supreme Court of the State of California as to the construction and effect of the act of 1863 and subsequent legislation supplementing its provisions. *Louisiana R. & N. Co.* v. *New Orleans,* 235 U. S. 164; *New York Electric Lines* v. *Empire City Co.,* 235 U. S. 179. And they insist that the language of the act explicitly offered the lands for sale, which offer was accepted by Banning through his application, the oath taken by him and the expendi-

tures made by him, and that this construction has supporting strength from the judicial contest authorized by the act and that the judgment rendered in such contest was effective not only against the losing contestant but against the State as well.

If we apply the analogy of the preëmption laws we shall have to reject immediately the contention based on the proceedings aside from the judgment rendered upon a conflict of applications, and against the asserted effect of such judgment we have also the analogy of a conflict of claims under the mining laws of the United States. In other words, the State made an offer to sell, which might have been perfected into an inviolable right, and provided for a contest of conflicting claims, not as against itself, but as to the rights of the contending parties. The rightful claimant being determined and his right of purchase perfected, the State is then bound by its offer and is then and not until then precluded from legislation withdrawing it. And the right of purchase is perfected only by the payment of some installment of the purchase price of the land. It is only then that the State has received anything of value from the applicant. What he has done prior, the expenditures he has made, are but the qualifications to become a purchaser, not binding him to proceed, nor binding the State to wait for that which may never be done before it determines on other uses or disposition of the lands. And to wait might mean serious embarrassment. We have seen in the case at bar that Banning applied first in 1866. His application was permitted to repose in the files of the county or state officers until 1878, when activity upon it was provoked by another application.

Plaintiffs in error have been unable to cite a single decision in sanction of their contention. The Supreme Court refers to one (*Hinckley* v. *Fowler*, 43 California, 56, 63), decided in 1872, as possibly being urged to support it.

If we may venture to express our understanding of that case we should say that it is seriously disputable if it so decides. However, the court said that the case, so far as it announced such view, that is, "so far as it announces the rule that the filing of the application creates a contract binding on the state before any part of the price is paid, must be considered as overruled by the later decisions." *Messenger* v. *Kingsbury,* 158 California, 611, 615, and cases cited. Also *Polk* v. *Sleeper,* 158 California, 632. And these cases have become rules of property and factors in decision —indeed, would determine it, even if we had doubt of the construction of the applicable statutes, under the ruling of *Burgess* v. *Seligman,* 107 U. S. 20, and many subsequent cases.

A somewhat confused contention is made that by the act of March 28, 1868, and under the Political Code the rights of plaintiffs in error were preserved, and yet it seems to be contended that, though both act and code contain a provision excluding from their operation tide lands within two miles of any town or village, such provision is not applicable to lands theretofore applied for. The contentions we may suppose were rejected by the Supreme Court. And plaintiffs in error say that a decision either way cannot affect their "prior contention, that a binding contract of sale was created by the acceptance of the State's offer, through the filing in 1866 of the application to purchase under the act of 1863." Further discussion of the contentions is therefore unnecessary. Nor is further discussion of the effect of the judgment in the contest proceedings necessary. If by the incorporation of Wilmington in 1872 the act of April, 1870, and the Political Code of 1872 which excluded all tide lands within two miles of Wilmington became effective, the lands were withdrawn from sale and plaintiffs in error could have acquired no rights by proceedings subsequent to such incorporation. This, we have seen, was the judgment of

the Supreme Court of the State. The court had decided in prior cases that the State was not a party to the contest (*Cunningham* v. *Crowley*, 51 California, 128, 133); that the contest decided only the rights of the opposing parties (*Berry* v. *Cammet*, 44 California, 347; *Polk* v. *Sleeper*, *supra*).

The judgment undoubtedly is conclusive between the parties, determines their rights, as between themselves, and establishes the privilege to purchase the lands acquired by the prior application, even against the State "*so long as the statute remained in force*," to use the language of *Hinckley* v. *Fowler*, *supra*. This explanation may be given of all the cases cited by plaintiffs in error upon the effect of the judgment.[1] As long as the statute existed, rights could be acquired under it. Upon its repeal or limitation such opportunity was taken away.

*Judgment affirmed.*

---

[1] *Cadierque* v. *Duran*, 49 California, 356; *Christman* v. *Brainerd*, 51 California, 534; *Wright* v. *Laugenour*, 55 California, 280; *Dillon* v. *Saloude*, 68 California, 267; *Cushing* v. *Keslar*, 68 California, 473; *Garfield* v. *Wilson*, 74 California, 175; *Anthony* v. *Jilson*, 83 California, 296, 299–300; *Goldberg* v. *Thompson*, 96 California, 117.