## JAMES BAIRD CO. v. GIMBEL BROS., Inc.
### No. 330.

Circuit Court of Appeals, Second Circuit.
April 10, 1933.

Campbell, Harding, Goodwin & Danforth, of New York City (Garrard Glenn and William L. Glenn, both of New York City, of counsel), for appellant.

Chadbourne, Stanchfield & Levy, of New York City (Leonard P. Moore and David S. Hecht, both of New York City, of counsel), for appellee.

Before MANTON L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff sued the defendant for breach of a contract to deliver linoleum under a contract of sale; the defendant denied the making of the contract; the parties tried the case to the judge under a written stipulation and he directed judgment for the defendant. The facts as found, bearing on the making of the contract, the only issue necessary to discuss, were as follows: The defendant, a New York merchant, knew that the Department of Highways in Pennsylvania had asked for bids for the construction of a public building. It sent an employee to the office of a contractor in Philadelphia, who

had possession of the specifications, and the employee there computed the amount of the linoleum which would be required on the job, underestimating the total yardage by about one-half the proper amount. In ignorance of this mistake, on December twenty-fourth the defendant sent to some twenty or thirty contractors, likely to bid on the job, an offer to supply all the linoleum required by the specifications at two different lump sums, depending upon the quality used. These offers concluded as follows: "If successful in being awarded this contract, it will be absolutely guaranteed, * * * and * * * we are offering these prices for reasonable" (sic), "prompt acceptance after the general contract has been awarded." The plaintiff, a contractor in Washington, got one of these on the twenty-eighth, and on the same day the defendant learned its mistake and telegraphed all the contractors to whom it had sent the offer, that it withdrew it and would substitute a new one at about double the amount of the old. This withdrawal reached the plaintiff at Washington on the afternoon of the same day, but not until after it had put in a bid at Harrisburg at a lump sum, based as to linoleum upon the prices quoted by the defendant. The public authorities accepted the plaintiff's bid on December thirtieth, the defendant having meanwhile written a letter of confirmation of its withdrawal, received on the thirty-first. The plaintiff formally accepted the offer on January second, and, and, as the defendant persisted in declining to recognize the existence of a contract, sued it for damages on a breach.

Unless there are circumstances to take it out of the ordinary doctrine, since the offer was withdrawn before it was accepted, the acceptance was too late. Restatement of Contracts, § 35. To meet this the plaintiff argues as follows: It was a reasonable implication from the defendant's offer that it should be irrevocable in case the plaintiff acted upon it, that is to say, used the prices quoted in making its bid, thus putting itself in a position from which it could not withdraw without great loss. While it might have withdrawn its bid after receiving the revocation, the time had passed to submit another, and as the item of linoleum was a very trifling part of the cost of the whole building, it would have been an unreasonable hardship to expect it to lose the contract on that account, and probably forfeit its deposit. While it is true that the plaintiff might in advance have secured a contract conditional upon the success of its bid, this was not what the defendant suggested. It understood that

the contractors would use its offer in their bids, and would thus in fact commit themselves to supplying the linoleum at the proposed prices. The inevitable implication from all this was that when the contractors acted upon it, they accepted the offer and promised to pay for the linoleum, in case their bid were accepted.

It was of course possible for the parties to make such a contract, and the question is merely as to what they meant; that is, what is to be imputed to the words they used. Whatever plausibility there is in the argument, is in the fact that the defendant must have known the predicament in which the contractors would be put if it withdrew its offer after the bids went in. However, it seems entirely clear that the contractors did not suppose that they accepted the offer merely by putting in their bids. If, for example, the successful one had repudiated the contract with the public authorities after it had been awarded to him, certainly the defendant could not have sued him for a breach. If he had become bankrupt, the defendant could not prove against his estate. It seems plain therefore that there was no contract between them. And if there be any doubt as to this, the language of the offer sets it at rest. The phrase, "if successful in being awarded this contract," is scarcely met by the mere use of the prices in the bids. Surely such a use was not an "award" of the contract to the defendant. Again, the phrase, "we are offering these prices for * * * prompt acceptance after the general contract has been awarded," looks to the usual communication of an acceptance, and precludes the idea that the use of the offer in the bidding shall be the equivalent. It may indeed be argued that this last language contemplated no more than an early notice that the offer had been accepted, the actual acceptance being the bid, but that would wrench its natural meaning too far, especially in the light of the preceding phrase. The contractors had a ready escape from their difficulty by insisting upon a contract before they used the figures; and in commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves.

But the plaintiff says that even though no bilateral contract was made, the defendant should be held under the doctrine of "promissory estoppel." This is to be chiefly found in those cases where persons subscribe to a venture, usually charitable, and are held to their promises after it has been completed. It has been applied much more broadly, however, and has now been generalized in section 90, of the Restatement of Contracts. We may arguendo accept it as it there reads, for it does not apply to the case at bar. Offers are ordinarily made in exchange for a consideration, either a counter-promise or some other act which the promisor wishes to secure. In such cases they propose bargains; they presuppose that each promise or performance is an inducement to the other. Wisconsin, etc., Ry. v. Powers, 191 U. S. 379, 386, 387, 24 S. Ct. 107, 48 L. Ed. 229; Banning Co. v. California, 240 U. S. 142, 152, 153, 36 S. Ct. 338, 60 L. Ed. 569. But a man may make a promise without expecting an equivalent; a donative promise, conditional or absolute. The common law provided for such by sealed instruments, and it is unfortunate that these are no longer generally available. The doctrine of "promissory estoppel" is to avoid the harsh results of allowing the promisor in such a case to repudiate, when the promisee has acted in reliance upon the promise. Siegel v. Spear & Co., 234 N. Y. 479, 138 N. E. 414, 26 A. L. R. 1205. Cf. Allegheny College v. National Bank, 246 N. Y. 369, 159 N. E. 173, 57 L. R. A. 980. But an offer for an exchange is not meant to become a promise until a consideration has been received, either a counter-promise or whatever else is stipulated. To extend it would be to hold the offeror regardless of the stipulated condition of his offer. In the case at bar the defendant offered to deliver the linoleum in exchange for the plaintiff's acceptance, not for its bid, which was a matter of indifference to it. That offer could become a promise to deliver only when the equivalent was received; that is, when the plaintiff promised to take and pay for it. There is no room in such a situation for the doctrine of "promissory estoppel."

Nor can the offer be regarded as of an option, giving the plaintiff the right seasonably to accept the linoleum at the quoted prices if its bid was accepted, but not binding it to take and pay, if it could get a better bargain elsewhere. There is not the least reason to suppose that the defendant meant to subject itself to such a one-sided obligation. True, if so construed, the doctrine of "promissory estoppel" might apply, the plaintiff having acted in reliance upon it, though, so far as we have found, the decisions are otherwise. Ganss v. Guffey Petroleum Co., 125 App. Div. 760, 110 N. Y. S. 176; Comstock v. North, 88 Miss. 754, 41 So. 374. As to that, however, we need not declare ourselves.

Judgment affirmed.