On Rehearing.
 

 WESTERFIELD, Judge ad hoc.
 
 [1]
 

 Relator seeks by mandamus to compel ' Lucille May Grace, the register of the state land office, and L. B. Baynard, the state auditor, to transfer to the Atchafalaya Basin Levee District certain lands
 
 *1033
 
 which, it is alleged, were adjudicated to the State of Louisiana in the year 1895, in the name of W. S. Lovell, in order to remove a cloud upon the title of relator who claims to have acquired an interest in the Lovell lands from the Houma National Bank on August 18, 1911. The Houma National Bank acquired at a foreclosure sale from the Caillon Manufacturing Company, the preceding vendors being James W. Martin, Edward Wisner, and the Atchafalaya Basin Levee District. It does not appear that the property was ever transferred by the State of Louisiana to the Atchafalaya Basin Levee District, relator’s author in title, by any formal conveyance, though there is a note on the books of the state land office opposite a description of the property “Atchafalaya Basin Levee Fund.”
 

 The respondents filed exceptions of nonjoinder of parties defendant and of no cause of action, averring that the petition of relator sought to coerce the transfer of certain lands to his author in title, in addition to those acquired through W. S. Lovell to which the state had- no title, and that, therefore, relator’s suit was one for the reformation of an instrument, a proceeding which required that all parties interested should be impleaded with the result that complicated issues of fact were raised not reviewable on mandamus. Answering to the merits, respondents justified the refusal to transfer the lands to the levee district on the ground that Act No. 97 of 1890, relied upon by relator, had been repealed by Act No. 237 of 1924, and that this contention was fortified by contemporaneous construction of the statute by the present administrative officer, the Attorney General, and his predecessors in office, covering a period of twelve years.
 

 The exceptions were referred to the merits, and following a trial below judgment was rendered dismissing relator’s demand, from which judgment relator appealed.
 

 The original hearing in' this court resulted in a judgment of affirmation with Justice ODOM dissenting, Justice BRUNOT being the organ of the court. Thereafter, a rehearing was granted and the writer called in to sit in the place of Justice PONDER, who had been recused because of his having been the trial judge when sitting as district judge for the parish of East Baton Rouge.
 

 As appears from the records of the state .land office, the following property, once owned by W. S. Lovell, was adjudicated to the State of Louisiana:
 

 “1st. A certain tract of land being 23, 24, 25, 26, 27, 28, 29 and 30, 2nd — Lots 2, 3, 4 of Section 69 and fractional section 74 T 19, S.R. 17 E, all containing fourteen hundred and three acres.
 

 “389 acres of land being the East 1/2 of E 1/2 of Section 73 and SE 1/4 of SE 1/4 of Section 77, and SW 1/4 of NE 1/4 and S 172 of Section 76 T 19 S.R.,17 E.”
 

 Article 3 of relator’s petition reads as follows:
 

 “That on June 8th, 1895, lands owned by W. S. Lovell, situated in the Parish of Terrebonne, embraced within the limits of the Atchafalaya Basin Levee District and described as Sections 23, 24, 25, 26, 27, 28,
 
 *1035
 
 29 and 30; Lots two, three, and four of Section 69; and fractional section 74; and E% of E% of Sec. 75, and SE% of SE% of Section 77, and SW}4 of NE^4 and S% of Section 76, T. 19 S.R. 17 E were sold to the State of Louisiana for unpaid taxes.”
 

 Contrasting the description given in article 3, with that of the Lovell land acquired by the state, results in the following discrepancy: In article 3 we find the “E% of E% of Section 75” instead of the
 
 “Ey2
 
 of
 
 Ey2
 
 of Section 73,” as appears in the records of the State Land Office. Perhaps, this difference may be accounted for as a clerical error in the numbering of the section.
 

 In article 11 of the petition, which describes the property relator obtained from the Houma National Bank, the following, which appears in article 3, is omitted:
 

 “E% of E% of Section 75 (73).
 

 “SW% of NE& and S% of Section 76.”
 

 And there is included the following which does not appear in article 3 or in the records of the state land office:
 

 “Lots 5, 6, and 7 and the S% of Section 78, containing 220.28 acres, South % of Lot No. 2 of Section 78 containing 41.24 acres.”
 

 The description of the property as contained in the prayer of relator’s petition, with the exception of two small differences, apparently clerical errors, is the same as is found in article 11 of the petition. There is also a discrepancy in the acreage as described in article 11 and the prayer of the petition with the acreage obtained by the state from Lovell. The records of the state land office show that 1,792 acres in all were acquired, in which relator claims only a one-half interest, yet the acreage mentioned in article 11 of the petition is 1,712.48 and in the prayer 1,712, ah area approximately as large as the entire Lovell tract.
 

 It might well be said that this suit, as drawn, contains a cumulation of summary and ordinary proceedings or, in other words, an action for reformation of title coupled with a mandamus. See State ex rel. Higgins v. Aicklen et al., 167 La. 456, 119 So. 425; State ex rel. Brenner v. Noe, 186 La. 102, 171 So. 708.
 

 Since this is a mandamus proceeding and since it appears that the description of the property which relator seeks to have conveyed to his author in title embraces lands which had never been acquired by the State of Louisiana by adjudication through W. S. Lovell or any other tax debtor, or otherwise, it would seem that there is much merit in both exceptions filed by respondents.
 

 “A writ of mandamus will not lie unless the action desired is an absolute obligation on the part of the person sought to be coerced, and the relator must show not only a cléar legal right to have the thing done, but to have it done in the manner and form in which he desires the respondent to perform it.” State ex rel. v. Smith, 104 La. 370, 29 So. 40 (syllabus).
 

 See, also, State ex rel. v. Clancy, 166 La. 810, 118 So. 28; State ex rel. v. Bailey, 168 La. 688, 689, 123 So. 125.
 

 
 *1037
 
 “Mandamus will not issue commanding a state officer to' do that which the law does not authorize him to do.” State ex rel. v. Michel, 122 La. 188, 47 So. 460 (syllabus).
 

 See, also, Henderson v. Shreveport, 160 La. 360, 368, 107 So. 139.
 

 Relator devotes very little attention to the questions of law raised by the exceptions. He contents himself with pointing out that at least a part of the land to which he seeks to perfect his title is properly described as having been acquired by the State of Louisiana from W. S. Lovell, and that as to this property, at least, he is entitled to have a mandamus issue to compel the proper officers to convey the land to his author in title, the Atchafalaya Basin Levee District, with reservation of his right. to take appropriate action for the establishment of the validity of his title to the other property claimed.
 

 We have serious doubt as to the propriety of this procedure, but in view of the conclusion which we have come to and considering also the time and labor expended by counsel in the preparation of numerous and able briefs and learned and exhaustive arguments upon the merits, we have concluded to consider that feature of the case as well, rather than to dispose of the matter as we believe we might well do upon the exceptions.
 

 Section 11 of Act No. 97 of 1890, which created the Board of Commissioners of the Atchafalaya Basin Levee District, an act similar in its provisions with other acts creáting other boards for other levee districts throughout the state, reads as follows :
 

 “Be it further enacted, etc., That in order to provide additional means to carry out the purposes of this act, and to furnish resources to enable said board to assist in developing, establishing and completing a levee system in said district, all lands now belonging, or that may hereafter belong to the State of Louisiana, and embraced within the limits of the levee district as herein constituted, shall be, and the same hereby are given, granted, bargained, donated, conveyed and delivered unto said Board of Levee Commissioners of the Atchafalaya Basin Levee District whether said lands or parts of lands originally granted by the Congress’ of the United States to this State or whether said lands have been, or may hereafter be, forfeited to, or bought in by or for, or sold to the State, at tax sales for non-payment of taxes, where the State has, or may hereafter become the owner of lands, by or through tax sales, conveyances thereof! shall only be made to said Board of Levee Commissioners after the period of redemption shall have expired; provided, however, that any and all former owners of lands which have been forfeited to purchasers by or sold to the State for nonpayment of taxes, may at any time within the six months next ensuing after the date of the passage of this act redeem said lands, or any of them upon paying to the Treasurer of the State all taxes, interests, costs and penalties due thereon down to the date of such redemption, but such redemptions shall be deemed and be taken to be sales of lands by the State, and all
 
 *1039
 
 and every sum or sums of money so received shall be placed to the credit of the Atchafalaya Basin Levee District. After the expiration of said six months it shall be the duty of the Auditor and the Register of the State Land Office on behalf of and in the name of the State, to convey to the said Board of Levee Commissioners, by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said board, whenever from time to time said Auditor and said Register of the State Land Office, or either of them, shall be requested to do so by said Board of Levee Commissioners, or by the president thereof, and thereafter said president of said board shall cause said conveyances to be properly recorded in the recorder’s office of the respective parishes wherein said lands are or may be located, and when said conveyances are so recorded the title to said land, with the possession thereof, shall, from .thenceforth vest absolutely -in said Board of Levee Commissioners, its successors or grantees; said lands shall be exempted from taxation after being conveyed to and while they remain in the possession or under the control of said board. Said Board of Levee Commissioners shall have the power and authority to- sell, mortgage, pledge or otherwise dispose of said lands in such manner and at such times and for such prices as to said board shall seem proper, but all proceeds derived therefrom shall be deposited in the State Treasury to thé credit of the Atchafalayh Basin Levee District, and shall be drawn out only upon the warrants of the president of said board, properly attested as provided in this act. Provided, that the tax provided shall hot be levied on produce raised on lands not alluvial.”
 

 We entertain no doubt as to the right of the vendees of the Atchafalaya Basin Levee District to demand from the state a title to land adjudicated to it for taxes, pursuant to the provisions of Act No.
 
 97
 
 of 1890, with the same force and effect as could the levee board itself if it were before the court instead of its more or less remote transferee. State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, 142 La. 111, 76 So. 327; Atchafalaya Land Company, Ltd., v. Grace, Register et als., 143 La. 637, 638, 79 So. 173.. If the right of the levee board to unredeemed property adjudicated to the state, within its levee district, has not been affected by subsequent legislation, it is conceded by all parties that relator’s right to have his title perfected by the transfer which he seeks to have made to the levee board would be absolute, pretermitting any question of a proper description of the lands.. It is not now contended, as it was originally, that there had been an actual transfer by the state to the levee board which had been lost or mislaid. So far as any indicia of title from the state is concerned, the sole reliance of relator is upon a nota-, tion which appears - upon the records of the state land office opposite a description of the Lovell land, “Atchafalaya Basin Levee Fund.” However, it is immaterial so far as Act No. 97 of 1890 is concerned whether the lands were" conveyed and the instrument of conveyance lost, or wh'ether the levee board gave title to the lands before it had acquired title from the state,
 
 *1041
 
 or without having obtained title at all, for under the provisions of that act, it is only necessary for a request to be made by the board of levee commissioners, in whose shoes its transferee stands, and when such request is made “it shall be the duty of the Auditor and the Register of the State Land Office on behalf of and in the name of the State, to convey to the said Board of Levee Commissioner's, by proper instruments of conveyance the lands hereby granted or intended to be granted and conveyed to said board.”
 

 Act No. 237 of 1924, which is entitled an act “regulating the manner and terms on which property bid in for and adjudicated to the State for unpaid taxes may hereafter be sold, prescribing the duties of certain officers with regard thereto, and repealing all laws or parts of laws, general or special, inconsistent with or contrary to this act”, provides in section 1 as follows:
 

 “Be it enacted by the Legislature of Louisiana, that when the period fixed bylaw for the redemption of property ■ bid in for and adjudicated to the State of Louisiana for unpaid taxes due subsequent to January 1, 1880, shall have expired, without such property having been redeemed by the former owner or other persons to whom the right of redemption is granted, should any person desire to purchase any such property bid in for and adjudicated to the State for. unpaid taxes, he shall with an application to purchase,' deposit with the Register of the State Land Office, the sum of Fifteen Dollars ($15.00) as evidence of good faith in said. application. Should such applicant, at the sale herein provided for, fail to purchase such property, then and in that event, the money so deposited shall be returned to him; provided, that should no one at the sale bid up to the minimum price hereinafter stipulated, then said money shall be retained to pay the expense of said sale.”
 

 Section 4 provides for the public sale of property, by the sheriff of the parish in which it is situated, to the last and highest bidder for cash with certain provisos.
 

 Section 5 stipulates that in the event that no bid is received at the sale equal to the minimum price fixed in the advertisement, as provided in section 3, the sheriff shall certify the fact to the register of the státe land office and a method is-provided for the readvertisement and sale.
 

 Section 6 decrees that the money derived from the sale shall be forwarded to the treasurer of the State of Louisiana less certain deductions for expenses.
 

 Section
 
 9
 
 declares that: “Nothing in this act shall be construed to apply to any lands in this State that have been adjudicated to the State for the non-payment, either in whole or in part, of acreage taxes or forced contributions levied, imposed or assessed by any Drainage or Sub-Drainage District under and by Virtue of a vote of the property tax-payers in such Drainage or Sub-Drainage District, where such adjudication to the State- was made subsequent to the year 1920. When any. lands are hereafter -adjudicated to the State of Louisiana for the non-payment
 
 *1043
 
 wholly or in part of acreage taxes or forced contributions levied, imposed and assessed by any Drainage or Sub-Drainage District, or by any Gravity Drainage, or Gravity Sub-Drainage District of this State, whether levied and imposed as a result of the vote of property taxpayers or not, such lands shall be sold under the provisions of this Act, except that they shall not be sold for an amount less than all acreage taxes or forced contributions due thereon, together with interest and penalties.”
 

 Section 10 is the repealing clause and is in the following language:
 

 “All laws or parts of laws, general or special, inconsistent with or contrary with this Act are hereby repealed.”
 

 It is only necessary to read the Act of 1924 with the Act of 1890 to have it appear that the two acts are inconsistent and contain contrary and conflicting provisions for the disposal of property adjudicated to the state for the nonpayment of taxes. The Act of 1890 provides that all lands which have been or may hereafter be forfeited to the state for the nonpayment of taxes “are given, granted, bargained, donated, conveyed and delivered-unto said Board of Levee Commissioners of the Atchafalaya Basin Levee District” and it shall be the “duty of the Auditor and the Register of the State Land Office on behalf of and in the name of the State, to convey to said Board of Levee Commissioners.” Section 11. The Act of 1924 provides that “When the period fixed by law for the redemption of property bid in for and adjudicated to the State of Louisiana for unpaid taxes due subsequent to January 1, 1880, shall have expired, without such property having been redeemed by the former owner * * * should any person desire to purchase any such property * * * he shall with an application to purchase, deposit with the Register of the State Land Office,- the sum of Fifteen Dollars ($15.00) as evidence of good faith,” and finally that all avails of the sale of said property shall go into the State Treasury. It is impossible to enforce the provisions of both acts with respect to the sale of said property, since they require entirely different methods of procedure.
 

 Relator contends, first, that the Act of 1924 did not repeal the Act of 1890 and similar acts relating to land grants to levee boards because of the failure to make specific reference to the Act of 1890, and, second, “the various grants to the Levee Board operated in such a manner as to withdraw the property from further disposition by the Register of State Lands. The Act of 1924 will not destroy rights which have accrued to persons under previous enactments nor will it have effect on land held by the State within the various Levee Districts. The only effect the Act of 1924 can possibly have would be the disposition of property owned by the State and not reserved to one of the various Levee Districts.”
 

 In regard to the first contention we know of no reason why" any act cannot be repealed by implication. Article 23 of the Revised Civil Code. The authority relied upon by counsel, Board of Commissioners
 
 *1045
 
 v. Hardtner, 164 La. 632, 114 So. 494, does not sustain his contention. In that case it was said that it was unlikely that Act No. 30 of the Extra Session of 1915 intended to repeal the grant of mineral rights to levee districts throughout the state or that Act No. 230 of 1918 intended to repeal the grant of forest timber to the several levee districts, but the repealing clause in the acts referred to were different from that under consideration here. The repealing clause of Act No. 30 of the Extra Session of 1915 reads as follows:
 

 “Be it further enacted, etc., that all laws and parts of laws in conflict herewith be and the same are hereby repealed; provided that nothing herein contained shall have the effect of annulling or impairing in any way contracts of lease heretofore executed covering any such property.” Section 5.
 

 The repealing clause of Act No. 230 of 1918 says:
 

 “Be it further enacted, etc., That all laws or parts of laws inconsistent with or contrary to this Act be and the same are hereby repealed.” Section 8.
 

 Moreover, whatever was decided in the Hardtner Case was consonant with familiar rules of statutory interpretation whereby the intent of the Legislature was ascertained. There are two methods by which a statute is repealed — express terms and by necessary implication. The Legislature might have repealed eo nomine the sixteen levee board statutes, or it might just as effectively have repealed them by necessary implication as, we believe it has done, in this case. The general provisions of the Act of 1924 are in conflict, inconsistent with, and repugnant to the provisions of the earlier act. The entire subject, the sale of unredeemed property adjudicated to the state, is occupied by the later statute, the provisions of which are clearly incompatible and irreconcilable with the Act of 1890. The two acts cannot stand together. There is an exception in section 9 in favor of lands adjudicated to the state for “acreage taxes or forced contributions levied, imposed or assessed by any Drainage or Sub-Drainage District under and by virtue of a vote of the property tax-payers” which, in accordance with the well-known rule, expressio unius est exclusio alterius, emphasizes the legislative intent to except no other lands from the effect of the statute. The suggestion that if the Legislature had intended to repeal the various acts granting land to the levee boards throughout the state, it would have done so expressly, is, it seems to us, completely answered by pointing out that this end could as well be obtained by necessary implication. Certainly, in declaring that all unredeemed lands adjudicated to the state for nonpayment of taxes, except swamp lands, shall be governed by the provisions of the Act of 1924, there is little room for doubt concerning the legislative intent, for if there had been an intention or a desire to exempt levee lands as well as swamp lands, it would have been a very simple matter to have said so in section 9, where the provision for the exemption appears. What we have thus far said concerning the intention of the Legislature in the enactment of the Act of 1924, and its effect
 
 *1047
 
 upon other statutes on the same subject-matter, has been entirely based upon the provisions of the statute without regard to the repealing clause, and, if there was no repealing clause at all, it would seem plain to us, for the reasons stated, that the Legislature intended to substitute the method pointed out in the statute of 1924 for. the sale of such lands for all other methods of disposition theretofore in effect, but when the repealing clause is considered, the legislative-intent appears to be as clear as the noonday sun. “All laws or parts of laws, general or special, inconsistent with or contrary with this Act are hereby repealed.” All laws,
 
 general or special,
 
 are repealed. Those words occur in only twenty-six acts of the Legislature passed in the last thirty-six years, as follows:
 

 ■Act Tear Act Tear
 

 23 1904 55 1928
 

 182 1908 76 1928
 

 125 1912 ' 80 1928
 

 80 1914 59 1930
 

 194 1916 161 1932
 

 203 1920 6 1935 E. S. 2nd.
 

 85 1921 Ex. Sees. 25 1935 E. S. 3rd.
 

 68 1922 20 1935 E. S. 4th.
 

 237 1924 14 1936
 

 238 1924 33 1936
 

 68 1926 63 1936
 

 83 1926 67 1936
 

 49 1928 84 1936
 

 It may be said that the levee board statutes are not special statutes, but they are certainly one or the other, either general or special, and both classes of statutes are expressly repealed by the Act of 1924.
 

 But it is said that this view would render the act unconstitutional because repugnant to the Fourteenth Amendment of the Constitution of the United States and article 1, § 1, and article 4, § 15, of the-Constitution of the State of Louisiana, Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363, and that a construction of a statute which would render it unconstitutional is to be avoided if any other construction is possible. Admitting-the soundness of the principle invoked, we-come now to an examination of the effect of the act as we have construed it, hajving in mind the constitutional provisions referred to. ' ¡
 

 It will be borne in mind that] the-grants to the several levee boards arej not in prsesenti, as was held in Atchafalaya Land Company v. Dibert, Stark & Brown Cypress Company, 157 La. 689, 102 So. 871, 874, notwithstanding the mandatory-features of the act concerning the glrant of lands. In its opinion in that case the court said:
 

 “The question therefore ultimately resolves itself into this, was the grant to-the levee boards under Act 97 of 1890 a. grant of the lands in prsesenti or a mere grant of the right to acquire the lands by a conveyance from the proper state officers.
 

 “The question is not free from difficulty. The Act declares that the lands
 
 ‘shall be, and' the same hereby are given, granted, bargained, donated, conveyed and delivered’
 
 to the levee board. Had the act stopped here the-difficulty had been at an end, but the act provides that the former owners of lands forfeited, or sold to the state, for taxes shall have six months from the passage of the act in which to redeem, and then proceeds to declare that at the end of said six months, and,.
 
 *1049
 
 when requested by the levee board, the auditor and register of the land office shall convey to the levee board by proper instruments of conveyance the lands ‘granted or ■intended to be granted,’ which conveyances shall be duly recorded in the conveyance records of each parish,
 
 'and when said conveyances are so recorded the title to said .land, with the possession thereof, shall, from thenceforth vest absolutely in said board of .levee commissioners, its successors or grantees.’ ”
 

 See, also, St. Paul v. Louisiana Cypress Company, 116 La. 585, 40 So. 906; Hartigan v. Weaver, 126 La. 492, 52 So. 674; State v. Cross Lake Shooting & Fishing Club, 123 La. 208, 48 So. 891.
 

 As a matter of fact, they are not grants at all, but an offer or proposal to grant -or give, upon request directed to certain officers of the state named in the act, whose duty it then becomes to convey the property to the levee board and the levee board or the president thereof “shall cause said conveyances to be properly recorded in the recorder’s office of the respective parishes wherein said lands are or may be located, and when said conveyances are so recorded the title to said land, with the possession thereof, shall, from thenceforth vest absolutely in said Board of Levee Commissioners, its successors or grantees.”
 

 There can be no question of the impairment of contract rights or of property rights or vested interests so far as this case is concerned, for there has been no contract or property rights or no vested interest to be disturbed. Of course, we are not referring to lands which were sold by the levee board to which title was obtained in the manner pointed out and under the conditions imposed in the Act of 1890, prior to the. effective date of the Act of 1924, but only to lands to which the levee board did not acquire title from the State of Louisiana prior to the repeal of that statute by the Act of 1924. All that the relator in this case, who traces his title back to the levee board and no further, had, was an inchoate right to the property, a right to have the state auditor and register of the state land office by coercive process, such as mandamus, if necessary, transfer to his author in title, the Atchafalaya Basin Levee District, the land which the levee board had sold, but this right he had only so long as the levee board was given the right to obtain the transfer of the lands by requesting the designated officers to do so, a right which was withdrawn in 1924, when the repealing statute was enacted.
 

 Article 1805 of the Civil Code provides:
 

 “The acceptance to form a contract must be in all things conformable to the offer; any condition or limitation contained in the acceptance of that which formed the matter of the offer, gives him, who makes the offer, the right to withdraw it.”
 

 The suspensive condition of our law has been defined by the Supreme Court of the United States in New Orleans v. Texas & P. R. Co., 171 U.S. 312, 334, 18 S.Ct. 875, 883, 43 L.Ed. 178, as follows:
 

 “The suspensive condition, under the Louisiana Code, is the equivalent of the condition precedent at common law. The general principles in respect of conditions
 
 *1051
 
 precedent are set forth sufficiently for the purposes of this case by Chief Justice Shaw in Mill Dam Foundry v. Hovey, 21 Pick. [(Mass.) 417] 440, cited by appellant. Where the undertaking on one side is in terms a condition to the stipulation on the other, that is, — where the contract provides for the performance of some act, or the happening of some event, and the obligations of the contract are made to depend on such performance or happening, — the conditions are conditions precedent.”
 

 It seems obvious, therefore, that before invoking the provisions of the State and Federal Constitutions to the inviolability of construction, it would be necessary.to demonstrate that something in the nature of a contract exists, such, for instance, as would be the case if the levee district had obtained from the state and had recorded a title in the parish where the property was situated during the virility of the statute which offered the levee board this privilege.
 

 In Atchafalaya Land Company v. F. B. Williams Company, 146 La. 1047, 84 So. 351, 355, this court, in speaking of Act No. 97 of 1890, said:
 

 “But it is also well settled that the lands intended to be conveyed by the statute creating the levee district remained under the control of the Legislature so long as an absolute or indefeasible, title had not been vested in any individual or private corporation. In State v. Cross Lake Shooting & Fishing Club, supra, and again in State ex rel. Atchafalaya Basin Levee Board v. Capdervielle, Auditor, 142 La. 111, 76 So. 327, it was held that the Legislature retained the power to revoke the donation made by the statute creating the levee district in July, 1901, and the transfer an instrument of conveyance had not been issued to the board of commissioners.”
 

 In Board of Commissioners of Caddo Levee District v. Pure Oil Company, 167 La. 801, 120 So. 373, 376, this court held:
 

 “The Legislature, having created plaintiff [The Board of Commissioners of Cad-do Levee District] for public purposes, may revoke the grants made to it, notwithstanding the declaration as to the absolute vestiture of title, by abolishing plaintiff, or by withdrawing the grants, provided that, in doing so, it does not interfere with rights acquired by third persons.”
 

 In that case the Board of Commissioners of Caddo Levee District had caused the lands to be transferred by the state to the levee district, as to any land for which properly recorded and, therefore, when contrasted with, the case of Atchafalaya Land Company v. F. B. Williams Co., supra, serves as an illustration of the important distinction to be made between the rights of the vendees of the levee board to lands, title to which had vested in the board by transfer from the state prior to the repeal of the Act of 1890, and that of the levee board’s vendees to land where title had not vested in the levee board by transfer from the state in accordance with the provisions of Act No. 97 of 1890.
 

 In Smith v. Albritton, 153 La. 507, 96 So. 49, 50, is found a case in which, in an able opinion by the Chief Justice of this
 
 *1053
 
 court, the point now under consideration was definitely disposed of. The case involved the conflicting claims of transferees holding title to the same land, one originating in Pierre Dolet, who held under a Spanish Grant in 1796, and the other in the State of Louisiana, the state having acquired by virtue of a swamp land grant by Act of Congress of March 2nd, 1849 (9 Stat. 352). After tracing in an interesting manner the title from 1796 to date and holding that the transferees of Dolet appeared to have a perfect title, the court said:
 

 “In opposition to what appears to be a perfect title in the appellees in these suits, the appellant makes this argument: That the swamp land grants of 1849 and 1850 were grants in praesenti of all swamp lands, subject to overflow and not fit for cultivation, ‘not claimed or held by individuals’; and that the Pierre Dolet grant was ‘not claimed’ by his heirs when the swamp land grants were enacted, because the Dolet heirs had not availed themselves of the provisions of the Act of May 26, 1824, within the time allowed by the Act of June 17, 1844, renewing or extending the act of 1824.”
 

 The court then assumed arguendo that the Dolet heirs had not complied with the Act of 1824 (4 Stat. 52) and said that if the land embraced by the Dolet grant “had been approved to the state, under the provisions of the swamp land grants, before the enactment of the Act of June 22, 1860, for the adjustment and recognition of private land claims like that of the Dolet heirs, a patent to the state, under the swamp land grants, would have conveyed a valid title. See Brott v. New Orleans Land Company, 151 La. 134, 91 So. 653, and the decisions there cited.”
 

 It held, however, that the Land Department of the United States did not convey the lands to the state when it might have done so, the mere passage of the act not having the effect of the conveyance:
 

 “The .statutes are very explicit in that respect. The second section of the act of 1849 declares that, when the Governor of Louisiana shall have advised the Secretary of the Interior that the state has prepared to defray the expense of an examination of the swamp lands subject to overflow and unfit for cultivation, the Secretary shall cause the examination to be made under the direction of the Surveyor General, by experienced and faithful deputies, and a list of the lands shall be made out and certified by the deputies and the surveyor general to the Secretary of the Interior, who shall approve the same, ‘so far as they are not claimed or held by individuals; and
 
 on that approval, the fee simple to said lands shall vest in the said ■ State of Louisiana, subject to the disposal of the Legislature thereof
 

 “It is plain, therefore, that the fee simple to the swamp lands of the United States did not vest in the state of Louisiana by mere operation of the swamp land grants, without a selection by the state, and an examination, listing and approval by the Interior Department. The swamp land grants have been declared grants in priesenti, only in this sense, that the subsequent selection, listing and approval of the lands to the state has the retroactive
 

 
 *1055
 
 effect of conveying title as> of the date of the statute.”
 

 The court then quoted from the case of Rogers Locomotive & Machine Works v. American Emigrant Company, 164 U.S. 559, 570, 17 S.Ct. 188, 191, 41 L.Ed. 552, 557, a part of which we reproduce here:
 

 “ ‘While, • therefore, as held in many cases, the act of 1850 [see 43 U.S.C.A. §§ 982-984] was
 
 in prcesenti,
 
 and gave an inchoate title, the lands needed to be identified as lands that passed under the act; which being done, and not before, the title became perfect as of the date of the granting act. Wright v. Roseberry, 121 U.S. 488, 494 [7 S. Ct. 985] 30 [L.Ed.] 1039, 1040 et seq.; Tubbs v. Wilhoit, 138 U.S. 134, 137 [11 S.Ct. 279] 34 [L.Ed.] 887, 888; Chandler v. Calumet & H. Min. Co., 149 U.S. 79, 91 [13 S.Ct. 798] 37 [L.Ed.] 657, 661. So, in Ehrhardt v. Hogaboom, 115 U.S. 67, 68 [5 S.Ct. 1157] 29 [L.Ed.] 346; “In French v. Fyan, 93 U.S. 169, 23 [L.Ed.] 812, this court decided that, by the second section of the swamp land act, the power and the duty devolved upon the Secretary of the Interior, as the head of the department which administered the affairs of the public lands, of determining what lands were of the description granted by that act, and made his office the tribunal whose decision on that subject was to be controlling.” The identification of lands as lands embraced by the swamp land act was therefore necessary before the state could claim a patent or exercise absolute control of them.’ ”
 

 The court also quoted from Little v. Williams, 231 U.S. 335, 339, 34 S.Ct. 68, 70, 58 L.Ed. 256, 259, as follows:
 

 “ ‘As this land was never so identified, and, so 'far as appears, its identification was never even requested by the State, it follows that, even if at the date of the act the land was in fact swamp or overflowed, the state never acquired more than an inchoate title to it, a claim which was imperfect both at law and in equity.’”
 

 The swamp land grants under the several acts of Congress were declared to be grants in praesenti, but “only in this sense, that .the subsequent selection, listing and approval of the lands to the state has the retroactive effect of conveying title as of the date of the statute,” and concluded:
 

 “Our conclusion is that the lands embraced in the Pierre Dolet grant remained under the control of the Land Department of the government of the United States after the enactment of the swamp land grants, and that the rights which the state acquired by virtue of those grants did not interfere with the right of the Congress to give to the heirs of Pierre Dolet another chance to have their title confirmed, as was done by the Act of June 22, 1860, and again by the Act of June 10, 1872.”
 

 The holding in the Albritton Case is directly in point here, though that case goes much further than is necessary to support the views which we entertain, for the court there was dealing with a legislative grant which was, in a^ certain sense, in prsesenti as was expressly held, while the grant under consideration here was only, of a right to have the property transferred upon compliance with the conditions prescribed.
 

 
 *1057
 
 In Atchafalaya Land Company v. Grace, 143 La. 637, 638, 79 So. 173, it was held that Act No. 215 of 1908, providing for a method of disposition of state lands inconsistent with Act No. 97 of 1890, was without efféct upon the earlier act because “the state had parted with the lands donated to the levee, boards; that they were not thereafter open to entry as ‘public lands of the state,’ and that, having been subjected to the disposition of the levee boards, the contracts made by those boards with reference to them could not be affected by subsequent legislation.” This decision cannot be reconciled with previous or subsequent jurisprudence. In a later case, State ex rel. v. Grace, 161 La. 1039, 109 So. 830, 831, however, it was said:
 

 “It has been also held, ' under statutes making similar grants, worded, at least substantially, as the statute making the present grant, that the lands included in such grants remain under legislative control until the instruments called for by the acts making the grants are executed by the auditor and the register. Such is the effect of the rulings in State v. Cross Lake Shooting & Fishing Club, supra; Atchafalaya Basin Levee Board v. Capdervielle, Auditor, 142 La. 111, 76 So. 327. And Atchafalaya Land Company v. F. B. Williams Cypress Company, 146 La. 1047 [84 So. 351].”
 

 The Legislature of the State of California in 1863 gave individuals the right to acquire tide lands under certain conditions and this right was later abrogated. It was contended that the action of the Legislature in repealing the former statute was unconstitutional under the contract clause. The Supreme Court of the United States, however, in Banning Co. v. California, 240 U.S. 142, 36 S.Ct. 338, 341, 60 L.Ed. 569, held that the statute was free from constitutional objection as applied to Banning, who had not done everything necessary to acquire title to the land before the revocation of the statute, though he had gone to considerable extent and met some-of the conditions for the reason that the “offer and acceptance must have the characteristics of a bargain, must be conventional • counterparts.”
 

 Where a contract may be said to exist, however, a different situation obtains, as was held in Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 308, 75 L.Ed. 562:
 

 “The trust deeds are contracts within the meaning of the contract clause of the Federal Constitution. They were fully executed before the taking effect of the state law under which the- excise is claimed. The commonwealth was without authority by subsequent legislation, wheth-' er enacted under the guise of its power to tax or otherwise, to alter their effect or to impair or destroy rights which have vested under them. Appleby v. City of New York, 271 U.S. 364, 46 S.Ct. 569, 70 L.Ed. 992; Fletcher v. Peck, 6 Cranch, 87, 136, 3 L.Ed. 162; Dartmouth College v. Woodward, 4 Wheat. 518, 624, 656, 4 L.Ed. 629; Farrington v. Tennessee, 95 U.S. 679, 683, 24 L.Ed. 558; Carondelet Canal Company v. Louisiana, 233 U.S. 362, 363, 378, 34 S.Ct. 627, 58 L.Ed. 1001.”
 

 
 *1059
 
 Contemporaneous construction by administrative officers of. the state has been alleged and proven to be in accord with the views we entertain of the effect of the Act of 1924. The persuasive force of such construction upon the courts when considering the meaning of ambiguous laws has long been recognized. St. Bernard Syndicate v. Grace, 169 La. 666, 125 So. 848; Black on Interpretation of Laws, p. 290; 59 Corpus Juris, 1022, verbo “Statutes”. But there is no need to pile Pelion upon Ossa; the intent of the Legislature sufficiently appears from the text of the statute.
 

 We conclude that relator must fail in his effort to force the state auditor and register of the state latid office to convey to his author in title lands which are the subject of this suit. The title to those lands reposes in the State of .Louisiana, which, at one time, offered them to the Atchafalaya Basin Levee District. The conditions of the offer were never complied with during the many years it remained open and in 1924 was withdrawn.
 

 For the reasons assigned, our original decree is reinstated and made the final decree of this court.
 

 O’NIELL, C. J., and LAND and ODOM, JJ., dissent.
 

 [1]
 

 In this ease, Mr. Justice PONDER having recused himself, and the remaining six Justices being evenly divided in their opinion, Honorable WILLIAM W. WESTERFIELD, Judge of the Court of Appeal, Parish of Orleans, heard the argument in the case and pronounced the opinion and judgment of the court on rehearing.